1

2

3        **UNITED STATES DISTRICT COURT**

4        **NORTHERN DISTRICT OF CALIFORNIA**

5        **SAN JOSE DIVISION**

6

7    ARMIN WASICEK, et al.,                    Case No.  23-cv-03665-BLF

8                    Plaintiffs,

9            v.                                 **ORDER GRANTING IN PART WITH
                                                LEAVE TO AMEND AND DENYING
10   SUMO LOGIC, INC., et al.,                  IN PART MOTION TO DISMISS**

11                   Defendants.                [Re:  ECF No. 19]

12           This is a putative class action alleging violations of Sections 14(a) and 20(a) of the

13   Securities Exchange Act of 1934 ("Exchange Act") against Sumo Logic, Inc. ("Sumo Logic"),

14   Ramin Sayar, and Stewart Grierson ("Defendants").  ECF No. 18 ("Amended Complaint" or

15   "AC").  Defendants have filed a motion to dismiss.  ECF No. 19 ("Mot."); ECF No. 30 ("Reply").

16   Plaintiffs oppose.  ECF No. 23 ("Opp.").  For the reasons explained below, Defendants' Motion to

17   Dismiss is GRANTED IN PART WITH LEAVE TO AMEND AND DENIED IN PART.

18   **I.     BACKGROUND**

19           **A.     The Parties**

20           Sumo Logic is a California-based software as a service ("SaaS") company that helps its

21   customers ensure application reliability, secure and protect against modern security threats, and

22   gain insights into their cloud infrastructure.  AC ¶ 15.  At all relevant times, Defendants Sayar and

23   Grierson were executives of the Company.  *Id.* ¶¶ 13–14.  Before his resignation on May 15, 2023,

24   Sayar was Sumo Logic's President and Chief Executive Officer.  *Id.* ¶ 13.  Grierson was Sumo

25   Logic's Chief Financial Officer before the Merger closed and is now its Chief Operating Officer.

26   *Id.* ¶¶ 1, 14.  Sayar and Grierson, along with eight others, comprised Sumo Logic's Board of

27   Directors (the "Board") during the relevant period from late 2022 through spring 2023.  *Id.* ¶ 13;

28   ECF No. 20-8 (Apr. 25, 2023 Form 10-K/A) at 5–6.  Plaintiffs allege that they were, at all relevant

times, holders of Sumo Logic common stock.  AC ¶ 11.  Plaintiffs Wasicek and Modium are former Sumo Logic employees.  ECF No. 15-4.

### B.    IPO to Acquisition

On September 17, 2020, Sumo Logic completed its initial public offering, closing at $22.00 per share.  AC ¶ 16.  Its common stock was listed on the Nasdaq Global Select Market under the symbol "SUMO."  *Id.* ¶ 12.  While the stock price reached approximately $40.00 per shared in February 2021, it declined to under $8.00 per share in June 2022.  Proxy at 34.  This decline led Sumo Logic's investors to express concerns with its stock price, growth, path to profitability, and business strategy.  *Id.*

In June 2022, Francisco Partners Management, L.P. ("Francisco Partners") submitted a non-binding proposal to acquire Sumo Logic for $11.00 per share of Sumo Logic's common stock, which the Company considered and rejected.  AC ¶ 18.

On August 25, 2022, Sumo Logic announced its financial results for the second quarter of fiscal year 2023.  ECF No. 20-3 ("Q2 FY2023 Earnings Call Tr.") at 3, 9, 11 (disclosing revenue, non-GAAP operating margin, and non-GAAP net loss among other metrics).  Sumo Logic reported that total revenue grew 26% from the prior quarter and annualized recurring revenue ("ARR") grew 25% from the prior quarter.  AC ¶ 19; Q2 FY2023 Earnings Call Tr. at 9.  Sumo Logic defines its ARR as "the annualized recurring revenue run-rate from all customers that are under contract with [Sumo Logic] at the end of the period or with which [they] are negotiating a renewal contract."  ECF No. 20-7 (FY 2023 Form 10-K) at 46.  According to Grierson, "ARR is the best metric to look at in terms of kind of the leading indicator of growth," as opposed to total revenue, which "is a trailing indicator in a SaaS business" and reflects "the benefit of the strength in the prior quarters."  Q3 FY2023 Earnings Call Tr. at 13; *see also* AC ¶ 21.

Francisco Partners remained interested in a potential transaction with Sumo Logic, making a non-binding acquisition proposal on November 2, 2022, at $11.50 per share.  AC ¶¶ 26–27.  By then, Sumo Logic's stock price had dropped to $6.98 per share.  ECF No. 20-11 (Stock Price Data); ECF No. 20-12 (Stock Price Chart).  Sumo Logic again considered and ultimately rejected Francisco Partners' revised offer. Proxy at 37.

United States District Court
Northern District of California

1    After receiving Francisco Partners' renewed interest, the Board in November 2022

2    delegated authority to its four-director Corporate Governance Committee (the "Governance

3    Committee") to oversee and assist the Company in exploring a sale and strategic alternatives.  AC

4    ¶ 27.  Neither Sayar nor Grierson served on that committee.  *Id.*  On November 4, 2022, Sumo

5    Logic engaged Morgan Stanley & Co. LLC ("Morgan Stanley") as its financial advisor to explore

6    a potential strategic transaction.  *Id.* ¶ 23.  That month, the Governance Committee met with

7    management to consider identifying a preliminary list of counterparties that might have an interest

8    in acquiring Sumo Logic.  Proxy at 36.  In December, the Board directed Morgan Stanley to

9    contact 14 potential acquirers to better understand their interest in acquiring Sumo Logic.  *Id.* at

10   37.  Sumo Logic entered into confidentiality agreements with 11 of the 14 potential bidders—nine

11   financial sponsors and two strategic acquirers.  *Id.*

12   On December 5, 2022, Sumo Logic announced its financial results for the third quarter of

13   fiscal year 2023.  AC ¶¶ 66–70; ECF No. 20-5 ("Q3 FY2023 Earnings Call Tr.") at 3, 9, 11

14   (disclosing revenue, operating margin, and net loss among other metrics).  Sumo Logic reported

15   that total revenue grew 27% from the prior quarter and annualized recurring revenue ("ARR")

16   grew 22% from the prior quarter.  AC ¶¶ 68, 70; Q3 FY2023 Earnings Call Tr. at 3, 9.  Sumo

17   Logic also predicted 23% revenue growth year-over-year for the full 2023 fiscal year.  *Id.*

18   In late December 2022, management prepared financial projections to assist the Board and

19   Governance Committee in evaluating a potential sale process.  The Governance Committee gave

20   input on those projections, which management incorporated in an updated long-range plan shared

21   with the full Board on January 6, 2023.  AC ¶¶ 32, 34.  The Board gave additional feedback,

22   which management incorporated in a finalized long-range plan (the "Long-Range Plan").  *Id.* ¶¶

23   33–36; Proxy at 39.  On January 13, 2023, the Board approved providing the Long-Range Plan to

24   Morgan Stanley and potential acquirors.  AC ¶ 36.

25   The Long-Range Plan provided unaudited financial forecasts for fiscal years 2024 through

26   2026.  *Id.* ¶ 62; Proxy at 57.  To further aid in the Company's long-term planning, management

27   prepared extrapolations for fiscal year 2027, and Morgan Stanley prepared extrapolations for fiscal

28   years 2028 through 2033.  *Id.*  The "Projections" referenced in the Proxy consisted of all three

financial analyses—the unaudited financial projections for fiscal years 2024 through 2026 contained in the Long-Range Plan, together with both extrapolations (the "Projections"). *Id.*; AC ¶¶ 53, 62. The Projections assumed a decrease in revenue growth to 14% for fiscal year 2024 with that growth reaccelerating to 21% and 26% for 2025 and 2026, respectively, as the sales force "ramp[ed] and reach[ed] full productivity" following the recent organizational changes. AC ¶¶ 72–73; Q3 FY2023 Earnings Call Tr. at 9; Proxy at 59 ("assumptions reflect expected future productivity improvements from Sumo Logic's sales team in addition to incremental capacity").

On January 23, 2023, *The Information* published an article revealing preliminary details of a potential merger. AC ¶ 40. The market responded by bidding up Sumo Logic's stock price in anticipation of a merger. *Id.* ¶¶ 40, 51; ECF No. 11 (Stock Price Data). While Sumo Logic's unaffected stock price closed at $7.67 per share on January 20, 2023, the last trading day before the leak and ensuing speculation, its share price jumped to around $12.00 per share within a few days. ECF No. 20-11 (Stock Price Data); ECF No. 20-12 (Stock Price Chart). In the days following the leak, two potential acquirers submitted bids for Sumo Logic. Meanwhile, in the ten days following the leak, seven potential bidders dropped out. Proxy at 40–43. Several other potential acquirers either failed to enter into confidentiality agreements with Sumo Logic or indicated they were uncertain of their ability to consummate an acquisition. *Id.* at 43.

On January 24, 2023, Francisco Partners offered $11.95 per share for the Company. AC ¶ 42. On January 25, a financial sponsor ("Sponsor D") offered $10.50 per share but withdrew its bid nine days later. Proxy at 41–42. Meanwhile, Sumo Logic urged Francisco Partners to further increase its bid. AC ¶¶ 43, 45; Proxy at 42–44. On February 3, 2023, Francisco Partners revised its offer to $12.00 per share, and on February 8, further increased its offer to $12.05 per share. AC ¶¶ 48–49, 51. No other potential acquirer submitted an actionable proposal.

On February 8, 2023, the full Board met with Management and Morgan Stanley to consider Francisco Partners' offer. *Id.* ¶ 52. Early the next day, Morgan Stanley presented its opinion to the Board that Francisco Partners' $12.05 offer was "fair" and in the best interest of Sumo Logic and its stockholders. *Id.* ¶ 53; Proxy at 44. All ten Board members unanimously voted to approve the Merger. Proxy at 45. According to the Proxy, the Board's approval and

recommendation that stockholders vote in favor of the Merger was grounded in numerous material factors and benefits, including Sumo Logic's "history of losses, and the challenges to achieving profitability in the near term, along with evolving investor expectations regarding profitability at technology companies," as well as the fact that Sumo Logic's Q4 FY2023 financial results "were below the company's internal forecast and analyst's estimates of Sumo Logic's financial performance on new annual recurring revenue for that period." *Id.* at 45–46. The parties signed a merger agreement and announced the Merger that morning. *Id.* at 44.

On March 7, 2023, Sumo Logic announced its financial results for the fourth quarter of fiscal year 2023. AC ¶¶ 71; ECF No. 20-6 ("Q4 FY2023 Earnings Release"). Sumo Logic reported that total revenue grew 19% from the prior quarter and annualized recurring revenue ("ARR") grew 17% from the prior quarter. *Id.*

On April 5, 2023, Sumo Logic filed the Proxy statement with the SEC informing stockholders about the Merger. *See* Proxy. The Proxy disclosed, among other things: a list of risks regarding the Merger, *id.* at 24–25, Morgan Stanley's fairness opinion and financial analyses, *id.* at 48–50; additional details about the Projections, *id.* at 57–60; and potential conflicts of interest affecting the Board and management, *id.* at 60. The Proxy specifically identified the Projections' assumed decline in revenue growth to 14% for 2024 and 21% for 2025. *Id.* at 57–59. The Company also incorporated by reference in the Proxy further disclosures in its 2023 fiscal year Form 10-K filed on March 16, 2023 and in additional SEC filings through the date of the stockholder vote. *Id.* at 105.

After the announcement of the Merger and the filing of the Proxy, six lawsuits were filed in spring 2023 alleging the disclosures were misleading under Section 14(a).[1] ECF No. 20-9 (Supplemental Proxy). Sumo Logic also received 12 demand letters that included similar

---

[1] *O'Dell v. Sumo Logic, Inc., et al.*, Case No. 1:23-cv-02601-KPF (S.D.N.Y.), filed Mar. 28, 2023; *Wang v. Sumo Logic, Inc., et al.*, Case No. 1:23-cv-02633-KPF (S.D.N.Y.), filed Mar. 29, 2023; *Hesse v. Sumo Logic, Inc., et al.*, Case No. 1:23-cv-02695-KPF (S.D.N.Y.), filed Mar. 30, 2023; *Bushansky v. Sumo Logic, Inc., et al.*, Case No. 4:23-cv-01542-KAW (N.D. Cal.), filed Mar. 31, 2023; *O'Neill v. Sumo Logic, Inc., et al.*, Case No. 1:23-cv-03227-KPF (S.D.N.Y.), filed Apr. 18, 2023; *Jones v. Sumo Logic, Inc., et al.*, Case No. 1:23-cv-00430-GBW (D. Del.), filed Apr. 20, 2023.

allegations.  *Id.*  The Company denied these challenges but issued supplemental disclosures "in order to minimize expense and distraction and avoid the uncertainty of any litigation." *Id.*

Sumo Logic's stockholders overwhelmingly approved the Merger on May 10, 2023, with 99.4% of voted shares cast in favor.  ECF No. 20-10 ("May 10, 2023 Form 8-K").  The Merger closed on May 12, 2023.  AC ¶ 56.

### C.   Alleged False Statements

Plaintiffs allege six false or misleading statements in the Proxy.

*First*, the Proxy states:

> In preparing and approving the Projections, Sumo Logic management utilized the following material assumptions. Sumo Logic management using its business judgement, **believed in good faith that these assumptions were reasonable: A decline in revenue growth to 14% in fiscal year 2024** before reaccelerating to 21 percent and 26 percent in fiscal years 2025 and 2026, respectively.

AC ¶ 75 (quoting Proxy at 59, emphasis in AC).  Plaintiffs allege that the statement is false because "Defendants Sayar and Grierson did not actually believe in good faith that assuming a decline in revenue growth to 14% for fiscal year 2024 was reasonable." *Id.*

*Second,* the Proxy states:

> The Projections were prepared and/or approved by, and are the sole responsibility of, Sumo Logic management. At Sumo Logic's direction, Morgan Stanley relied on the accuracy and completeness of the Projections utilized in its financial analyses and its advice to the Sumo Logic Board, as well as the assurances of Sumo Logic management that (1) it was not aware of any facts or circumstances that would make such information inaccurate or misleading; and (2) the Projections were reasonably prepared and/or approved based on the best currently available estimates and judgments of Sumo Logic management of the future financial performance of Sumo Logic.

*Id.* ¶ 76 (quoting Proxy at 57).  Plaintiffs allege that "[o]nce again, Defendants Sayar and Grierson knew that the Projections were *not* reasonably prepared and did *not* reflect their best estimates and judgments of the Company's future financial performance." *Id.*

\\

\\

\\

6

*Third*, the Proxy includes the Projections at issue:

The following table presents a summary of the Projections. This table corrects for the additional add-back of amortization of intangible assets for fiscal years 2024 through 2027 that is further described in the section of this proxy statement captioned "—Background of the Merger."

| (dollars in millions) | Fiscal year ended January 31, | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | January 2023 long-range plan unaudited financial information | | | Extrapolations | | | | | | |
| | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E | 2030E | 2031E | 2032E | 2033E |
| Revenue | $342 | $413 | $520 | $665 | $850 | $1,070 | $1,291 | $1,502 | $1,680 | $1,805 |
| EBIT[1] | ($34) | ($4) | $38 | $81 | $136 | $196 | $266 | $344 | $423 | $496 |
| Depreciation | $2 | $2 | $0 | $0 | $4 | $4 | $4 | $3 | $2 | $0 |
| EBITDA (Unburdened by Stock-Based Compensation)[2] | ($32) | ($2) | $39 | $81 | $140 | $200 | $270 | $347 | $425 | $496 |
| Stock-Based Compensation[3] | ($79) | ($87) | ($95) | ($86) | ($101) | ($115) | ($125) | ($130) | ($127) | ($117) |
| Taxes | ($2) | ($2) | ($3) | ($3) | ($12) | ($24) | ($39) | ($58) | ($80) | ($101) |
| Capital Expenditures | ($0) | ($0) | ($0) | ($0) | ($0) | ($0) | ($0) | ($0) | ($0) | $0 |
| Change in Net Working Capital | $16 | $32 | $21 | $13 | $17 | $20 | $20 | $19 | $16 | $11 |
| Unlevered Free Cash Flow (Burdened by Stock-Based Compensation)[4] | ($98) | ($60) | ($39) | $5 | $44 | $80 | $125 | $177 | $234 | $289 |

AC ¶ 77 (quoting Proxy at 57).  Plaintiffs allege that the Projections are "materially false and misleading because they contain revenue projections that Defendants knew were unreasonably low and did not accurately or reasonably reflect the Company's financial prospects."  *Id.*  Plaintiffs also allege that "[t]he Projections were also misleading because they failed to take into account Sumo Logic's practice of expanding its customer base and developing its technology through acquisitions of smaller companies as part of its standalone business strategy."  *Id.* ¶ 78.

*Fourth*, the Proxy states, "[o]n December 5, 2022, Sumo Logic announced earnings for the third quarter of its 2023 fiscal year."  AC ¶ 83 (quoting Proxy at 37).  Plaintiffs allege "[t]his was a material omission because it downplayed the fact that the Company was exceeding expectations at the time – a key consideration for investors evaluating whether to sell."  *Id.*

*Fifth*, the Proxy states, "Sumo Logic's financial results for the fourth quarter of its 2023 fiscal year, which were below the company's internal forecast and analyst's estimates of Sumo Logic's financial performance on new annual recurring revenue for that period."  AC ¶ 84 (quoting Proxy at 46).  Plaintiffs allege that this statement omits that the Q4 earnings beat public projections.  *Id.*

United States District Court
Northern District of California

*Sixth*, the Proxy includes the implied value per share ranges of Sumo Logic Common Stock under a Public Trading Comparables Analysis and Discounted Equity Value Analysis.  AC ¶ 88 (citing Proxy at 51–52).

**Public Trading Comparables Analysis:**

| Forecast Scenario | Implied Value per Share Range of Sumo Logic Common Stock ($) |
|---|---|
| street case | 5.91 – 11.15 |
| Projections | 10.47 – 15.31 |

**Discounted Equity Value Analysis:**

| Public Trading Multiples | Implied Value per Share Range of Sumo Logic Common Stock ($) |
|---|---|
| **AV / CY2023E Revenue** | |
| street case | 7.26 – 13.12 |
| Projections | 7.18 – 12.94 |
| **AV / CY2024E Revenue** | |
| street case | 7.91 – 13.24 |
| Projections | 8.13 – 13.70 |

Plaintiffs allege that the numbers "are materially false or misleading because they were derived utilizing the unreasonably low revenue projections and thus presented a misleadingly low value for shareholders' shares." *Id.*

### D.    Procedural Posture

Plaintiff Joseph Michel, on behalf of himself and a putative class of Sumo Logic stockholders, brought this action on July 25, 2023.  ECF No. 1.  Michel did not move to be lead plaintiff.  Instead, Armin Wasicek, Devendra Modium, and Ranjit Kapil (collectively, "Plaintiffs"), represented by Michel's same counsel, sought appointment as co-lead plaintiffs.  ECF No. 15.  On October 18, 2023, the Court granted their motion.  ECF No. 17.  Plaintiffs filed their amended Complaint on November 20, 2023, alleging misrepresentations and omissions in the Proxy that made it false or misleading.  AC ¶¶ 75–92.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 | **II.    LEGAL STANDARD**

2 |     **A.    Rule 12(b)(6)**

3 |    "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

4 | claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

5 | *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

6 | 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts

7 | as true all well-pled factual allegations and construes them in the light most favorable to the

8 | plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court

9 | need not "accept as true allegations that contradict matters properly subject to judicial notice" or

10 | "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

11 | inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

12 | While a complaint need not contain detailed factual allegations, it "must contain sufficient factual

13 | matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

14 | 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

15 | is facially plausible when it "allows the court to draw the reasonable inference that the defendant

16 | is liable for the misconduct alleged." *Id.*  On a motion to dismiss, the Court's review is limited to

17 | the face of the complaint and matters judicially noticeable.  *MGIC Indem. Corp. v. Weisman*, 803

18 | F.2d 500, 504 (9th Cir. 1986); N. *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

19 | 1983).

20 |     **B.    Rule 9(b) and the Private Securities Litigation Reform Act of 1995**

21 |    In addition to the pleading standards discussed above, a plaintiff asserting a private

22 | securities fraud action must meet the heightened pleading requirements imposed by Federal Rule

23 | of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *In*

24 | *re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Rule 9(b) requires a

25 | plaintiff to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see*

26 | *also In re VeriFone Holdings*, 704 F.3d at 701.  That is, "the complaint must allege specific facts

27 | regarding the fraudulent activity, such as the time, date, place, and content of the alleged

28 | fraudulent representation, how or why the representation was false or misleading, and in some

*United States District Court*
*Northern District of California*

1    cases, the identity of the person engaged in the fraud." *In re Bare Escentuals, Inc. Sec. Litig.*, 745

2    F. Supp. 2d 1052, 1065 (N.D. Cal. 2010).  Similarly, under the PSLRA "the complaint shall

3    specify each statement alleged to have been misleading, the reason or reasons why the statement is

4    misleading, and, if an allegation regarding the statement or omission is made on information and

5    belief, the complaint shall state with particularity all facts on which that belief is formed." 15

6    U.S.C. § 78u-4(b)(1).

7            The PSLRA further requires that "in any private action arising under this chapter in which

8    the plaintiff may recover money damages only on proof that the defendant acted with a particular

9    state of mind, the complaint shall, with respect to each act or omission alleged to violate this

10   chapter, state with particularity facts giving rise to a strong inference that the defendant acted with

11   the required state of mind." *Id.* § 78u-4(b)(2)(A).  However, "the subjective falsity required by

12   Section 14(e) is not equivalent to the scienter requirement referenced in 15 U.S.C. § 78u-

13   4(b)(2)(A) nor that required by, for example, Section 10(b)." *In re Finjan Holdings, Inc.*, 58 F.4th

14   1048, 1052 (9th Cir. 2023).  Section 4(b)(2) does not apply" where "an author could negligently

15   state an opinion in which he does not subjectively believe", "even when the challenged statement

16   is a statement of opinion." *Id.* at 1059; *Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2023 WL

17   3592098, at *13 (N.D. Cal. May 22, 2023).

18   **III.   DISCUSSION**

19           Plaintiffs allege a claim under § 14(a) and Rule 14a-9 against all Defendants.  *See* AC ¶¶

20   104–112.  "To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that '(1) a

21   proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff

22   injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation

23   materials, was an essential link in the accomplishment of the transaction.'"  *New York City Emps.'*

24   *Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v.*

25   *Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502

26   F.3d 212, 228 (3d Cir. 2007)).  Section 14(a) and Rule 14a-9 also include a loss causation

27   requirement.  *Id.*

28   \\

United States District Court
Northern District of California

1

### A.   Request For Judicial Notice

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).  Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Defendants request consideration as incorporated by reference in the Complaint and/or judicial notice of Exhibits 1–12, ECF No. 20, which Defendants describe as "the Proxy, Sumo Logic's supplemental disclosures incorporated by reference in the Proxy, its other relevant SEC filings, its earnings disclosures, and its historical stock prices, which are readily ascertainable and not subject to reasonable dispute."  Mot. at 8.

Plaintiffs respond that the Court "'cannot take judicial notice of disputed facts contained in . . . public records,' and must 'identify which fact or facts it is noticing.'"  Opp. at 3 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1002 (9th Cir. 2018)).  Plaintiffs argue that they "allege that key disclosures in the Proxy were untrue and misleading, and these allegations cannot be overridden by facts subject to dispute that Defendants introduce through their request for judicial notice and/or documents incorporated by reference."  *Id.* at 4.

The Court GRANTS judicial notice of Defendants' exhibits.  *See Metzler Inv. GMBH v.*

*Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (granting judicial notice of publicly available financial documents such as SEC filings); *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (granting judicial notice of publicly available articles or other news releases of which the market was aware). The Court does not take notice of the truth of any of the facts asserted in these documents. *See Mehedi*, 2023 WL 3592098, at *5.

### B.    Pleading Standard

Defendants argue, and Plaintiffs do not appear to dispute, that the Amended Complaint sounds in fraud. Mot. at 10, 16, 21; *see* Opp. at 25.

Rule 9(b) applies "where a claim is grounded in fraud or sound[s] in fraud, even if fraud is not an essential element" of the claim. *Finjan*, 58 F.4th at 1057 (internal quotations omitted). To determine whether a complaint sounds in fraud, the Court "must normally determine, after a close examination of the language and structure of the complaint, whether the complaint 'alleges a unified course of fraudulent conduct' and 'relies entirely on that course of conduct as the basis of a claim.'" *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). For Section 14 claims, the PSLRA's heightened 4(b)(1) pleading standard also applies to claims that sound in fraud. *Finjan*, 58 F.4th at 1057–58; *Mehedi*, 2023 WL 3592098, at *13 (applying *Finjan* to Section 14(a) claims). "The particularity requirements of Section 4(b)(1) and Rule 9(b) are not identical, but they are similar." *Id.* at 1057.

The Court determines that, as currently pled, the Section 14 claim sounds in fraud. Here, Plaintiffs allege Defendants "***knew***" the Projections were unreasonable, but said otherwise in the Proxy. *E.g.*, AC ¶¶ 64–65, 72, 74–77, 82. Because Plaintiffs allege knowledge by Defendants, their claims sound in fraud. *Finjan*, 58 F.4th at 1057 (claims based on allegation that "management knew" revenue predictions were wrong sounded in fraud); *City of Pontiac Gen. Emps.' Ret. Sys. v. Bush*, No. 20-cv-06651-JST, 2022 WL 1467773, at *3 n.1 (N.D. Cal. Mar. 1, 2022) (claims based on defendants' knowledge of falsity of the challenged statements sounded in fraud). Thus, the Court finds that Plaintiffs must plead their allegations with particularity under Section 4(b)(1) and Rule 9(b). However, Plaintiffs need only plead negligence, not scienter under

United States District Court
Northern District of California

1    Section 4(b)(2).  *Finjan*, 58 F.4th at 1058; *Mehedi*, 2023 WL 3592098, at *13.

2       **C.    Projection Statements (Statements 1–3 and 6)**

3          The Court now turns to Defendants' arguments that Plaintiffs fail to allege Section 14(a)

4    violations for each of the six alleged false statements.  "For a statement to be false or misleading,

5    it must 'directly contradict what the defendant knew at that time' or 'omit[ ] material

6    information.'"  *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022)

7    (quoting *Khoja*, 899 F.3d at 1008–09); *see also* 15 U.S.C. § 78u-4(b)(1)(A)–(B).  First Plaintiffs

8    allege that Statements 1–3 and 6 are false or misleading for the same fundamental reason that

9    Defendants "did not actually believe in good faith that assuming a decline in revenue growth to

10   14% for fiscal year 2024 was reasonable." AC ¶ 75.  Second, Plaintiffs allege that Statements 4

11   and 5 are false or misleading because Defendants downplayed performance by omitting from the

12   Proxy "that the Company was exceeding expectations" in Q3 FY2023 and Q4 FY2023.  *Id.* ¶ 83.

13   This section addresses arguments unique to Statement 1–3 and 6, and the following section

14   addresses arguments unique to Statements 4 and 5.

15         Defendants argue that Statements 1–3 and 6 (the "Projections Statements") are not

16   actionable misstatements because: (1) Plaintiffs fail to plead that the Projections Statements were

17   objectively or subjectively false, Mot. at 11–16, and (2) the Projections Statements were forward-

18   looking statements protected by the PSLRA safe harbor, *id.* at 16–20.  The Court addresses these

19   issues in turn.

20         **1.  Whether Plaintiffs Have Adequately Alleged That the Projections**
             **Statements Are False or Misleading**
21

22         The parties do not dispute that Statements 1–3 and 6 are opinion statements.  Mot. at 14;

23   Opp. at 4; Reply at 9.  Opinions are not actionable unless the "complaint alleges with particularity

24   that [they] were both objectively and subjectively false or misleading." *Rubke v. Capitol Bancorp*

25   *Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009); *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083,

26   1095–96 (1991).  "The statements must have been false at the time they were made." *Id.* (citing

27   *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000).  Defendants argue that Plaintiffs

28   fail to plead either objective or subjective falsity, which the Court addresses in turn.

United States District Court
Northern District of California

a.   Objective Falsity

Defendants argue that "[t]here is nothing contradictory between [] past results—which showed Sumo Logic's revenue growth was ***slowing*** (dropping from 27% growth year-over-year in Q3 to 19% year-over-year in Q4), as was its ARR growth (dropping from 22% growth year-over-year in Q3 to 17% year-over-year for the full 2023 fiscal year)—and the Projections."  Mot. at 12 (emphasis in original).

Plaintiffs respond that they "have alleged particular facts – including public statements Defendants made shortly before, contemporaneous with, and shortly after they prepared the Projections – that support a reasonable inference that the [Projection] Statements were directly contradicted by Defendants' then-current, **actual** beliefs concerning Sumo's expected revenue growth and that the Projections were objectively unrealistic."  Opp. at 8 (emphasis in original).

To plead objective falsity, Plaintiffs must allege "particularized facts that 'directly contradict' or are 'necessarily inconsistent with' [the alleged false statements]."  *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1052 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021), *and aff'd*, 847 F. App'x 368 (9th Cir. 2021) (citing *In re Read-Rite Corp.*, 335 F.3d 843, 848 (9th Cir. 2003), *abrogated on other grounds as recognized in S. Ferry, L.P. No. 2 v. Killinger*, 542 F.3d 776, 782–84 (9th Cir. 2008)).

The crux of Plaintiffs' allegations for Statements 1–3 and 6 is that Defendants' projected revenue growth of 14% for fiscal year 2024 "was wholly unreasonable and a false and inaccurate representation of Sumo Logic's financial prospects."  AC ¶ 72; ECF No. 35 ("Hearing Tr.") 26:6–9.  Plaintiffs argue that the "ongoing revenue growth rate significantly exceeded 14%, and the Company did not encounter a revenue downturn that could have justified the use of such a low growth rate for FY2024."  Opp. at 5.  But as Defendants note, several indicators suggested an upcoming downturn in revenue growth.  Defendants disclosed that in the three quarters prior to release of the Proxy, the year-over-year growth rate stagnated then dropped, from 26% in Q2 FY2023 to 27% in Q3 FY2023, down to 19% in Q4 FY2023.  The quarterly year-over-year ARR growth rate also decreased over those same three quarters, from 25%, to 22%, to 17%.

Sayar and Grierson also made public statements linking ARR to future growth and

1    disclosing causal factors to the then-observed ARR growth decrease.  On the Q3 earnings call,

2    Sayar stated, "ARR is the best metric to look at [as] the leading indicator of growth," while

3    "revenue is a trailing indicator . . . ."  Q3 Earnings Call Tr. at 13.  Grierson disclosed on the same

4    Q3 earnings call that:

5           ARR is impacted by the reduced number of total sales reps and ramp
            sales reps from the changes we have driven in the sales organization.
6           While these efforts are delivering better sales efficiency, ***it will take
            time for the sales organization to ramp and reach full productivity***.
7           As previously discussed, the benefit of these changes will not be
            linear in nature with greater impact as we progress into the second
8           half of FY '24 and beyond.

9    *Id.* at 9.  The decrease in growth rate from Q3 to Q4, the decrease in ARR from Q2 to Q4, and the

10   executive's statements are all consistent with a projected decreased in the annual growth rate of

11   14%.

12          Plaintiffs point to other statements to argue that the 14% growth rate figure "was

13   inconsistent with Defendants' public statements, and Sumo's 'actual and potential levels of

14   operation.'"  Opp. at 5 (quoting *Va. Bankshares*, 501 U.S. at 1094).  The Court addresses Q2

15   FY2023 and Q3 FY2023 earnings call statements in turn.

16          Plaintiffs point to four statements made by Defendants on the Q2 FY2023 earnings call

17   held on August 25, 2022.  As an initial matter, the Amended Complaint includes statements from

18   the earnings call, but not the specific statements raised in Plaintiffs' opposition.  The Court

19   nonetheless addresses them.  First, Sayar stated that Sumo "continue[d] to see healthy win rates

20   with our customers continuing to increase their adoption and usage of our platform" and that

21   Sumo was "positive on the long-term trends driving our business" and seeing "good momentum"

22   with key customers.  Q2 FY2023 Earnings Call Tr. at 3.  Each of these descriptors – "healthy win

23   rates," an "increase [in] adoption and usage," "positive on the long-term," and "good momentum"

24   – all imply nothing more than continued growth, which is consistent with the projected 14%

25   revenue growth rate.  Second, Sayar noted that Sumo had not seen any slowdown in "cloud

26   migration [amongst potential customers]."  Q2 FY2023 Earnings Call Tr. at 15. This may, as

27   Plaintiffs contend, indicate "that Sumo's customer base remained a durable source of growth."

28   Opp. at 6.  But that there is no slowdown (a term indicative of negative growth rate) is not

United States District Court
Northern District of California

inconsistent with a growth *rate* decreasing to 14%. Third, Grierson stated that Sumo was "pleased with [its] continued strong execution on both our top [i.e., revenue] and bottom line priorities" and that the Company had "not see[n] any meaningful changes in customers' buying behavior" despite the macroeconomic environment. Q2 FY2023 Earnings Call Tr. at 12, 14. Phrases like "strong execution" and "meaningful changes" are vague and, again, not inconsistent with a growth rate decreasing to 14%. Fourth, Grierson stated that Sumo was pleased with its revenue growth internationally, which exceeded 20% for the first time. *Id*. at 17. But revenue growth in one sector is, alone, not necessarily indicative or predictive of total revenue growth.

Plaintiffs also point to three statements made by Defendants on the Q3 FY2023 earnings call held on December 5, 2022. Again, the Amended Complaint includes statements from the earnings call, but not the specific statements raised in Plaintiffs' opposition. The Court nonetheless addresses them. First, Sayar stated that Sumo "continu[ed] to see strong win rates with our customers increasing their adoption and usage of our platform", "continue[d] to see strong traction with … partners for both observability and security deals," and had "**once again exceeded the high end of all of our guided metrics**." Q3 FY2023 Earnings Call Tr. at 3, 4, 6 (emphasis added). But without more information about what those guided metrics are, nothing indicates that this statement contradicts a projection of reduced growth rate. Second, regarding the Company's long-term revenue growth rate, Sayar remarked that "the effort around migrating of workloads to the cloud hasn't slowed down" and that the Company would "continue to deliver **improved results on both the top line and bottom line**." *Id.* at 23. But "improv[ing] results" is both vague and not inconsistent with a projection of a future decrease in growth rate. Third, Grierson stated that the Company experienced "moderate **revenue acceleration.**" *Id*. at 10. But Grierson's statement is unremarkable; it simply summarizes that the growth rate increased from 26% in Q2 to 27% in Q3. Fourth, Sayar stated that "[i]nternational [business] was strong again", which made up approximately "23-22%" of the Company's revenue and had experienced "50% growth year-over-year." Q3 FY2023 Earnings Call Tr. at 16. But as discussed above, revenue growth in one sector is, alone, not necessarily indicative or predictive of total revenue growth. While Plaintiffs are correct that Defendants made several positive observations about Sumo

1    Logic's performance; none of the statements identified by Plaintiffs "directly contradict" or even

2    undermine the growth concerns discussed elsewhere on the earnings calls.  *Weston, Inc.*, 29 F.4th

3    at 619; *Read-Rite*, 335 F.3d at 848.

4          Plaintiffs argue that because Defendants finalized the Projections in January 2023 (AC ¶¶

5    36, 62), after Francisco Partners made at least two offers, this contaminated Defendant's "ability

6    to model the Company's prospects without an outcome-directed bias."  Opp. at 7.  But with no

7    factual allegation indicating bias by Defendants, this allegation does not meet Rule 9(b) or PSLRA

8    pleading standards.

9          Plaintiffs also cite several cases where the other plaintiffs plausibly pled objective falsity,

10   but each is distinguishable from the facts as pled here.  In *In re Hot Topic, Inc. Sec. Litig.*, a buyer

11   made an offer to acquire the company Hot Topic.  No. CV 13-02939 SJO JCX, 2014 WL

12   7499375, at *2 (C.D. Cal. May 2, 2014).  Hot Topic rejected the initial offer, developed a set of

13   revised projections that significantly downgraded the company's expected growth, then

14   subsequently accepted a slightly higher offer from the buyer.  *Id.*  Hot Topic then instructed its

15   financial advisor to base a fairness opinion on the revised projections, and filed a proxy statement

16   soliciting votes for the acquisition.  *Id.* at *2–3.  The plaintiff alleged that higher projections were

17   omitted from the proxy, and the lower merger projections were allegedly directly contrary to

18   "every public statement" by the company over a two-year period.  *Id.* at *6–7.  The alleged facts

19   here are similar in that Plaintiffs allege that Defendants manufactured low projections to ease the

20   sale.  Furthermore, in *Hot Topic* and here, the offer price went up despite projections downplaying

21   growth.  But the main distinction is that *Hot Topic* plaintiff's allegations involved two sets of

22   contradictory projections, the "LRP Projections" and "Revised Projections" the latter of which

23   "assumed a slower build out of new stores and moderated the growth of outlet stores, gross margin

24   expansion, and revenue and margin contributions from new concepts."  *Id.* at 2.  *Hot Topic* also

25   alleged more specific contemporaneous statements at odds with the projections.  "For example,

26   [the plaintiff alleged] that in the Revised Projections, growth from Torrid was moderated

27   downwards even though Hot Topic frequently praised Torrid's growth, referring to it as the

28   Company's 'number one priority' and 'the major highlight' of the fourth quarter of 2012."  *Id.* at

United States District Court
Northern District of California

17

6.  Here, as discussed above, Defendants' statements about growth were either general and vague, or concerned only a fraction of Sumo Logic's customer base or revenue.  The *Hot Topic* plaintiff also alleged "that the Revised Projections assumed a slower build out of stores than the LRP Projections—a build out that Plaintiff suggests is contrary to the Company's stated goals to continue to open new Torrid stores, Hot Topic outlet stores, and Blackheart stores."  *Id.* at 6.  Plaintiffs here identify no similar contradictions.  Finally, the *Hot Topic* plaintiff also challenged "the Revised Projections' changes to gross revenue growth, given the Company's strong improvements in this area between 2010 and 2012."  *Id.* at *6 (internal citations omitted).  But here, Defendants have offered a plausible explanation during the earnings call that decreases in sales reps, evidenced by a decreasing ARR, would lead a temporary decrease in the growth rate.

Other cases addressing allegedly contradictory or undisclosed projections are also distinguishable.  In *Baum v. Harman Int'l Indus., Inc.*, the court found allegations that the company's CEO "expressed confidence in Harman's revenue growth overall" sufficient to plead the CEO and directors did not genuinely believe higher projections "contained greater downside risk than upside potential."  408 F. Supp. 3d 70, 86–87 (D. Conn. 2019).  The court rejected defendants' argument that the CEO's positive comments were made in conjunction with a "distinct analysis" separate from the projections at issue, reiterating that his comments reflected "confidence in [the company's] revenue growth *overall*."  *Id*. at 87.  Here, as discussed above, each of the executives' comments was not inconsistent with Projections based on a predicted 14% growth rate.  Similarly, in *Karri v. Oclaro, Inc.*, management revised their projections downward twice in two months despite at the same time publicly stating that the company's guidance had "**remained consistent** with its guidance from three months earlier."  No. 18-CV-03435-JD, 2020 WL 5982097, at *1 (N.D. Cal. Oct. 8, 2020) (emphasis added).  In *Brown v. Papa Murphy's Holdings Inc.*, the plaintiff alleged that **undisclosed** projections "reflected significantly higher projections in the company's financial performance, and that those projections were accurate."  No. 3:19-cv-05514-BHS-JRC, 2021 WL 235865 (W.D. Wash. Jan. 12, 2021), *report and recommendation adopted*, No. C19-5514 BHS-JRC, 2021 WL 1574446 (W.D. Wash. Apr. 22, 2021).  In *In re Envision Healthcare Corp.*, the Court denied a motion to dismiss, *inter alia*,

18

because Plaintiffs alleged a "lack of any meaningful change between" the date the higher projections and the lower projections were prepared.  No. CV 18-1068-RGA, 2019 WL 3494407 (D. Del. Aug. 1, 2019), *report and recommendation adopted*, No. 18-CV-01068-RGA, 2019 WL 4536554 (D. Del. Sept. 19, 2019).  These cases are all distinguishable because here, Plaintiffs have pled no direct contradiction between the alleged false statements and contemporaneous statements by Defendants and do not allege contradictory, inconsistent, undisclosed projections, or revised projections.

Plaintiffs have identified no statement made on an investor call, or in any other public disclosure, that is inconsistent with the projected 14% growth rate.  In fact, Defendants point to statements by Sayar and Grierson on the Q3 investor call that explain the rationale, decreasing ARR growth rate and reduced sales teams, that explain Defendants' rationale for selecting the lower growth rate.  Thus, the Court finds that Plaintiffs have not plausibly pled under the heightened Rule 9(b) and PSLRA standards that Statements 1–3 and 6 are objectively false.  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 14(a) claim for Statements 1–3 and 6 on this ground WITH LEAVE TO AMEND.

b.  Subjective Falsity

Defendants argue that "Plaintiffs' allegations supporting subjective falsity are especially thin."  Mot. at 15.  Plaintiffs respond that "Defendants did not genuinely believe that the Projections were best estimates of Sumo's performance (subjective falsity)."  Opp. at 8.

To allege subjective falsity, a Complaint must "include[] factual allegations sufficient to create a reasonable inference that [the defendant] did not believe" the statements.  *Finjan*, 58 F.4th at 1059.  This is determined with "a dual inquiry: first, we will determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a [reasonable] inference of [subjective falsity]; second, if no individual allegations are sufficient, we will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a [reasonable] inference of [subjective falsity]."  *Id.* at 1060 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 992 (9th Cir. 2009), *as amended* (Feb. 10, 2009)) (alterations in original)).  Subjective falsity is typically demonstrated through "[c]ircumstantial evidence", as it is

1    "unusual" to uncover "a director's naked admission of disbelief." *Va. Bankshares*, 501 U.S. at

2    1092, 1096.

3         Plaintiffs' support for their claims of subjective falsity are: 1) Sayar's and Grierson's

4    statements on past earnings and investor calls; 2) "Sumo Logic's financial performance

5    immediately preceding and during the time that Defendants prepared the Projections"; and 3)

6    Defendants' alleged conflicts of interest due to alleged benefits they received from the Merger.

7    *See* AC ¶¶ 57–58, 72.

8         Plaintiffs' allegations, whether standing alone or viewed holistically, do not create a

9    reasonable inference of subjective falsity.  As discussed in the previous section, Plaintiffs have not

10   alleged sufficient facts demonstrating that the statements are objectively false, and thus cannot

11   allege that Defendants knew the statements were subjectively false.  *Golub*, 372 F. Supp. 3d at

12   1052 (declining to address subjective falsity where objective falsity is not sufficiently pled).  Thus,

13   the Court finds that Plaintiffs have not plausibly pled under the heightened Rule 9(b) and PSLRA

14   standards that Statements 1–3 and 6 are subjectively false.  Accordingly, the Court GRANTS

15   Defendants' motion to dismiss Plaintiffs' Section 14(a) claim for Statements 1–3 and 6 on this

16   ground WITH LEAVE TO AMEND.

17              **2.  PSLRA Safe Harbor**

18        Defendants argue that Plaintiffs' Section 14(a) claim also fails under the PSLRA safe

19   harbor.  The safe harbor can apply in several instances, two of which are relevant here.  First the

20   safe harbor applies if a forward-looking statement is "(i) identified as a forward-looking statement,

21   and is accompanied by meaningful cautionary statements identifying important factors that could

22   cause actual results to differ materially from those in the forward-looking statement."  15 U.S.C. §

23   78u–5(c)(1)(A).  The safe harbor also applies if "the plaintiff fails to prove that the forward-

24   looking statement . . . if made by a natural person, was made with actual knowledge by that person

25   that the statement was false or misleading."  15 U.S.C. § 78u–5(c)(1)(B); *see Intuitive Surgical*,

26   759 F.3d at 1058; *Cutera*, 610 F.3d at 1108.  Defendants argue that the Projections Statements

27   were: (1) identified as forward-looking and accompanied by meaningful cautionary statements,

28   and (2) not made with actual knowledge of any falsity.  The Court addresses whether the

United States District Court
Northern District of California

20

statements are forward-looking, then whether they are accompanied by meaningful cautionary statements, and finally whether they were made with actual knowledge of any falsity.

### a. Whether the Projections Are Forward-Looking Statements

Defendants argue that "[t]he Projections and their underlying assumptions are 'classic growth and revenue projections, which are forward-looking on their face[.]'"  Mot. at 17 (quoting *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014)). Plaintiffs respond that the statements are not forward-looking because they "concerned Defendants' **then-present** opinions concerning the purported reasonableness of the Projections and the Company's **then-present** financial value."  Opp. at 18 (emphasis in original).

A forward-looking statement is defined as "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues."  *No. 84 Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003) (citing 15 U.S.C. § 78u5 (i)).  When a statement includes both forward-looking and non-forward-looking statements, the challenged statements still fall within the safe harbor as forward-looking if, when "examined as a whole, the challenged statements relate[ ] to future expectations and performance."  *Intuitive Surgical*, 759 F.3d at 1059  (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)).  "[I]n order to establish that a challenged statement contains non-forward-looking features . . . a plaintiff must plead sufficient facts to show that the statement goes *beyond* the articulation of 'plans,' 'objectives,' and 'assumptions' and instead contains an express or implied 'concrete' assertion concerning a specific 'current or past fact[ ].'"  *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191 (9th Cir. 2021) (quoting *Quality Sys.*, 865 F.3d at 1142, 1144) (emphasis in original).

Moreover, "a plaintiff cannot defeat [the] invocation of [the] safe harbor merely by alleging, for example, that the company knew that the announced forward-looking objective was unlikely to be achieved."  *Id.* at 1190.  In short, an expression of "present belief in a forward looking statement" is not a "present fact"; rather, such a contention would "work an end-run around the PSLRA's safe harbor provision."  *City of Hialeah Emps. Ret. Sys. v. FEI Co.*, 289 F.

Supp. 3d 1162, 1173 (D. Ore. 2018); *Golub*, 372 F. Supp. 3d at 1048 ("It strains logic to suggest that it is possible to make a forward looking statement that is not in at least some way based on a belief about the present state of things"); *Wochos v. Tesla, Inc.*, No. 17-cv-05828-CRB, 2018 WL 4076437, at *5 (N.D. Cal. Aug. 27, 2018) ("[E]very future projection depends on the current state of affairs. Were the Court to adopt Plaintiffs' conclusion, the distinction between present statements and forward-looking statements would collapse.").

Here, the challenged statements assert forward-looking assumptions about Sumo Logic's future revenue growth, operations, and financial performance. For example, Statement 1 discloses, "[i]n preparing and approving the Projections, Sumo Logic management utilized the following material assumptions. Sumo Logic management using its business judgement, **believed in good faith that these assumptions were reasonable.**" AC ¶ 75 (quoting Proxy at 59) (emphasis in original). Statement 2 disclosed that the Projections were "reasonably prepared and/or approved based on the best currently available estimates and judgments of Sumo Logic management of the future financial performance of Sumo Logic." AC ¶ 76 (quoting Proxy at 57). Such "forecast[s] . . . based on a past event informing [a] future outlook" are properly protected as forward-looking statements under the safe harbor. *Golub*, 372 F. Supp. 3d at 1047 (projections that "pertain to revenues and other financial data" "are classic forward-looking statements").

Plaintiffs cite several cases where courts found the PSLRA safe harbor did not apply. In *Karri*, the court held that (i) an opinion statement that projections "were reasonably prepared on bases reflecting the best currently available estimates and good faith judgments" of management and (ii) implied prices per share calculated by Oclaro's financial advisor and derived from lower projections, were not forward-looking. 2020 WL 5982097, at *5. In *Baum*, the plaintiff challenged a statement that "Harman's senior management determined that the Management Projections contained greater downside risk than upside potential." 408 F. Supp. 3d at 86. The court rejected defendants' argument that the statement was protected by the safe harbor, explaining "the statement plainly reflects Harman's assessment of the Management Projections, rather than an assumption on which the Management Projections were based." *Id.* In *NECA-IBEW Pension Tr. Fund v. Precision Castparts Corp. (Precision)*, the Court found "the statement

22

that the Revised Forecasts 'reflected management's most up-to-date and accurate forecasts' is a statement about past or present conditions."  No. 3:16-cv-01756, 2017 WL 4453561, at *11 (D. Or. Oct. 3, 2017).  It further found that, "[e]ven if all forward-looking statements express a present belief about a future event, all present beliefs are not forward-looking statements…if the statements can demonstrably be proven false at the time they were made…they are not forward-looking[.]"  *Id.*

To the extent that *Karri*, *Baum*, and *Precision* remain good law after *Wochos*, they do not apply here.  In *Wochos*, the Ninth Circuit held that statements are not actionable if they "rest on the sort of features that are intrinsic to all forward-looking statements" and must go "*beyond* the articulation of 'plans,' 'objectives,' and 'assumptions' and instead contains an express or implied 'concrete' assertion concerning a specific 'current or past fact[ ].'"  985 F.3d at 1191–92 (quoting *Quality Sys.*, 865 F.3d at 1142, 1144) (emphasis in original).

Here, the Proxy states that Defendants "believed in good faith that these assumptions were reasonable" (Statement 1) and "based on the best currently available estimates and judgments of Sumo Logic management" (Statement 2).  AC ¶¶ 75–76.  Imprecise statements about the inputs to a projection model do not transform projections from forward looking statements into present statements.

b.   Whether the Projections Are Identified as Forward Looking and Contain Meaningful Cautionary Statements

Having found that the Projection Statements as alleged are forward looking, the Court addresses whether the Proxy identifies the Projections as forward looking and contains meaningful cautionary statements.  Defendants argue that the Proxy included cautionary language.  Mot. at 18–19; *see* Proxy at 24, 58.  Plaintiffs respond that because the "Projections were actually objectively unreasonable and designed to procure a fairness opinion, the Proxy's cautionary language is misleading."  Opp. at 22.  Plaintiffs also argue that "Defendants' reliance on the Proxy's language warning that the Projections might not come to fruition is misplaced" because "[t]hat language fails to meaningfully warn of the pertinent fact—that the challenged opinions, Share Values, and Projections were not genuinely held or believed in by Defendants."  *Id.*

23

"To determine whether 'cautionary language' is adequate, courts ask whether the cautionary statements 'precise[ly]' and 'directly address' the alleged misrepresentations." *In re BioMarin Pharm., Inc. Sec. Litig.*, No. 3:20-cv-06719-WHO, 2022 WL 597037, at *3 (N.D. Cal. Feb. 28, 2022) (quoting *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996)).

Sumo Logic's Proxy contains several warnings about the Projections:

> ***The Projections constitute forward-looking statements***. The Projections are not included in this proxy statement to influence any decision on whether to vote for the merger proposal or any other proposal presented at the special meeting, but rather are included in this proxy statement to give stockholders access to certain non-public information that was provided to the Corporate Governance Committee, the Sumo Logic Board and Morgan Stanley for the purposes described above. By including the Projections in this proxy statement, none of the Corporate Governance Committee, the Sumo Logic Board, Sumo Logic, Sumo Logic management, Morgan Stanley or any person has made or makes any representation to any person regarding Sumo Logic's ultimate performance as compared to the information contained in the Projections. ***The inclusion of the Projections should not be regarded as*** an indication that the Corporate Governance Committee, the Sumo Logic Board, Sumo Logic, Sumo Logic management, Morgan Stanley or any other person considered, or now considers such ***information to be necessarily predictive of Sumo Logic's actual future results, and such information should not be relied on as such***. Further, the inclusion of the Projections in this proxy statement does not constitute an admission or representation by Sumo Logic that the information presented is material.
>
> . . .
>
> Although the Projections are presented with numerical specificity, it ***reflects numerous assumptions and estimates as to future events made by Sumo Logic management that Sumo Logic management believed in good faith were reasonable at the time that the Projections were prepared***. Sumo Logic's ability to achieve the financial results contemplated by the Projections will be affected by its ability to achieve its strategic goals, objectives and targets over the applicable periods, and will be subject to related operational and execution risks. The Projections reflect assumptions as to certain business decisions that are subject to change. ***Important factors that may affect actual results and cause the Projections not to be achieved can be found in the risk factors included in Sumo Logic's periodic filings with the SEC***. All of these factors are difficult to predict, and many of them are outside of Sumo Logic's control.
>
> . . .
>
> Because the Projections reflect estimates and judgments, they are susceptible to sensitivities and assumptions, as well as to multiple interpretations based on actual experience and business

1

developments. The Projections also cover multiple years, and such
information by its nature becomes less predictive with each
succeeding year. The Projections are not, and should not be
considered to be, a guarantee of future operating results. Further, the
Projections are not fact and should not be relied upon as being
necessarily indicative of Sumo Logic's future results or for purposes
of making any investment decision

Proxy at 57–58 (emphasis added).  In a separate section titled "Forward-Looking Statements," the

Proxy states:

This proxy statement, the documents to which we refer you in this
proxy statement and the information included in oral statements or
other written statements made or to be made by us or on Sumo Logic's
behalf may contain "forward-looking statements[.]"

. . .

These forward-looking statements involve risks and uncertainties,
including statements regarding: the merger, including the expected
timing of the closing of the merger; considerations taken into account
by the Sumo Logic Board in approving the merger; and expectations
for Sumo Logic following the closing of the merger.

If any of these risks or uncertainties materialize, or if any of Sumo
Logic's assumptions prove incorrect, Sumo Logic's actual results
could differ materially from the results expressed or implied by these
forward-looking statements.

*Id.* at 24.  The Proxy then lists 13 risk factors.  *Id.*

These statements directly address the Projections, identify them as forward looking, and

state the Projections reflect "estimates and judgments," are susceptible to "multiple

interpretations," and "are difficult to predict."  Proxy at 58.  Courts have found similar cautionary

language sufficient.  *See Cutera*, 610 F.3d at 1112 ("[T]hese prepared remarks contain forward-

looking statements concerning future financial performance and guidance ... management may

make additional forward-looking statements in response to questions, and ... factors like Cutera's

ability to continue increasing sales performance worldwide could cause variance in the results.");

*Intuitive Surgical*, 759 F.3d at 1059–60) (finding sufficient cautionary language in a disclaimer

that "[a]ctual results may differ materially from those expressed or implied, as a result of certain

risks and uncertainties. These risks and uncertainties are described in detail in the company's

[SEC] filings. Prospective investors are cautioned not to place undue reliance on such forward-

looking statements."); *Golub*, 372 F. Supp. 3d at 1050 ("In light of the foregoing factors and the

uncertainties inherent in the Management Projections, stockholders are cautioned not to place undue, if any, reliance on the projections included in this proxy statement.") (emphasis removed).

Plaintiffs' argument that "the challenged opinions, Share Values, and Projections were not genuinely held or believed in by Defendants," Opp. at 22, is simply not supported by the factual allegations in the Amended Complaint. As discussed *supra*, Plaintiffs have not pled any specific facts alleging, directly or circumstantially, regarding what Defendants genuinely held or believed. Regardless, what the Defendants' believed is largely irrelevant to the safe harbor analysis. "[I]f a forward-looking statement is identified as such and accompanied by meaningful cautionary statements, then the state of mind of the individual making the statement is irrelevant, and the statement is not actionable regardless of the plaintiff's showing of scienter." *Cutera*, 610 F.3d at 1112. For example, in *Cutera*, the court rejected arguments that "the particular speaker knew that the particular forward-looking statement was false," holding that "defendants' state of mind is not relevant to" either "identified forward-looking statements with sufficient cautionary language" or "immaterial statements." *Id.* at 1112–13. Here, the Projections are forward-looking statements accompanied by cautionary language, so whether Defendants knew that statements were false is irrelevant.

Because the Court finds that Statements 1–3 and 6 are forward-looking statements with sufficient cautionary language, they are not actionable under the PSLRA safe harbor exception. Thus, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 14(a) claim for Statements 1–3 and 6 on this ground WITH LEAVE TO AMEND.

### c. Actual Knowledge

The PSLRA safe harbor separately shields Defendants from liability where "the plaintiff fails to prove that the forward-looking statement . . . was . . . made or approved by [an executive officer of the company] with actual knowledge . . . that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B); *accord FEI*, 289 F. Supp. 3d at 1173. Forward-looking statements "fall outside the safe harbor if the plaintiff can allege facts that would create a ***strong inference*** that the defendants made the forecast(s) at issue with '***actual knowledge*** . . .that the statement was false or misleading.'" *Cutera*, 610 F.3d at 1112 (emphases added).

Defendants argue alternatively that "Plaintiffs fail to plead facts supporting even a reasonable, let alone strong, inference that Defendants had actual knowledge of any alleged falsity."  Mot. at 20.  Defendants instead contend that "the far more 'compelling' inference here is that Defendants were incentivized to obtain the best price possible for Sumo Logic, given Sayar and Grierson together held **over 3.7 million** shares and management and the Board together held **over 8.9 million shares**."  *Id.*

Plaintiffs respond that the actual knowledge exception applies because "Sayar did not actually believe the Projections reasonably reflected the best estimates of Sumo's future financial performance."  Opp. at 23 (arguing that "The concepts of subjective falsity and 'actual knowledge' that an opinion statement is false are identical").

Because, as discussed *supra*, Plaintiffs have not pled sufficient facts to show that the statements are objectively false, they similarly have not pled actual knowledge that the challenged statements were false or misleading.  Thus, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 14(a) claim for Statements 1–3 and 6 on this ground with leave to amend.

### D.    Omissions (Statements 4 and 5)

The Court now turns to Statements 4 and 5, which Plaintiffs allege are false or misleading because that Defendants omitted material facts from those statements.  The two statements concern Sumo Logic's Q3 FY2023 and Q4 FY2023 financial results.

Regarding Statement 4, Plaintiffs allege that "the Proxy's description of the Company's announcement for Q2 2023 noted that the Company had exceeded guidance" but that the same description for the Q3 FY2023 announcement did not "disclos[e] that the Company had outperformed its guidance for that quarter" even though it did exceed guidance (just like it did in the second quarter).  AC ¶ 83; *see* Proxy at 37.

Regarding Statement 5, Plaintiffs allege that "the Proxy misleadingly and omissively depicted Sumo Logic's results in Q4 FY2023 as 'below the company's internal forecast' and cited this putative fact as a reason for the Merger without disclosing that the Company's performance in Q4 had in reality ***beat*** the Company's stated expectations for the quarter."  AC ¶ 84 (emphasis in original).  Specifically, the Proxy states, "Sumo Logic's financial results for the fourth quarter of

its 2023 fiscal year, which were below the company's internal forecast and analyst's estimates of Sumo Logic's financial performance on new annual recurring revenue for that period." Proxy at 46; AC ¶ 84. Plaintiffs allege that this is misleading because it omits (like the Q3 announcement) that the Q4 results also beat public guidance.

Defendants argue that "Sumo Logic publicly disclosed its Q3 and Q4 2023 earnings and noted that it had exceeded its public guidance." Mot. at 20. Defendants further argue that Plaintiffs point to no facts alleging that the statement that Q4 results were below the company's internal forecast and analyst's estimates was an inaccurate disclosure. *Id.*; *see* Proxy at 46.

Regarding Statement 4, Plaintiffs respond that three metrics, actual revenue, non-GAAP operating margin, and non-GAAP net loss, exceeded guidance in both Q2 FY2023 and in Q3 FY2023 but that the Proxy omitted the statements when discussing Q3, which allegedly "created the false impression that—unlike the Q2 2023 results—the Q3 2023 results failed to exceed guidance with respect to those three metrics." Opp at 14–15. For Statement 5, Plaintiffs similarly argue that the Proxy "failed to disclose that Sumo's revenue, non-GAAP operating margin, and non-GAAP net loss had all *exceeded* expectations in Q4 2023" Opp. at 15.

To state a Section 14(a) claim based on an omission, Plaintiffs must plead facts showing that the Proxy "omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1)(B). "[H]alf-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations." *Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019); *Vargas v. Citrix Sys., Inc.*, No. 22-CV-62327-RAR, 2024 WL 413454, at *8–9 (S.D. Fla. Feb. 3, 2024) ("by disclosing negative factors regarding quarterly results, Defendants were obligated to similarly disclose material positive trends as well.").

However, several courts have been skeptical of omission-based claims when the omitted information is publicly and readily available elsewhere. *See In re Sona Nanotech, Inc. Sec. Litig.*, 562 F. Supp. 3d 715, 726 (C.D. Cal. 2021) (in Section 10(b) action, "[a] plaintiff is hard-pressed to build a fraud case from publicly disclosed information") (internal quotation omitted); *Chu v.*

*Sabratek Corp.*, 100 F. Supp. 2d 827, 834 (N.D. Ill. 2000) (in Section 10(b) action, "[a] plaintiff cannot credibly claim to be misled by a company's attempt to hide negative information when that same information is publicly available via alternate channels"); *Laborers' Loc. #231 Pension Fund v. PharMerica Corp.*, No. 3:18-cv-109-RGJ, 2019 WL 4645583, at *6–7 (W.D. Ky. Sept. 24, 2019) (in Section 14(a) action, proxy statement not misleading in light of disclosure in 10-K incorporated by reference).

Here, the Proxy undoubtedly includes certain explanations regarding its public guidance in its second quarter statement and omits those same explanations from the third quarter statement. The differences are clear when the statements are viewed side by side.

| Proxy's Statement Regarding Q2 FY2023 | Proxy's Statement Regarding Q3 FY2023 |
|---|---|
| On August 25, 2022, Sumo Logic announced earnings for the second quarter of its 2023 fiscal year. *Sumo Logic exceeded the guidance that it had provided to the investment community with respect to Sumo Logic's total revenue, non-GAAP operating margin and non-GAAP net loss per share for that quarter*. Proxy at 34. | On December 5, 2022, Sumo Logic announced earnings for the third quarter of its 2023 fiscal year. Proxy at 37. |

Opp. at 14 (emphasis in original); *see* AC ¶ 83; *compare* Proxy at 34 *with* Proxy at 37. Defendants are correct that the exact figures (not just comparisons to projections) are readily available through at least three alternate public channels. *See* ECF No. 20-2; (Ex. 99.1 attached to Sumo Logic's Form 8-K, filed with the SEC on August 25, 2022); ECF No. 20-4 (Ex. 99.1 attached to Sumo Logic's Form 8-K, filed with the SEC on December 5, 2022); Q3 FY2023 Earnings Call Tr. at 3, 9, 11 (disclosing revenue, non-GAAP operating margin, and non-GAAP net loss among other metrics). Here, Sumo Logic disclosed the following Q3 FY2023 **projections** in its Q2 FY2023 earnings announcement: total revenue of between $ 73.5–74.5 million, a non-GAAP operating margin of (24)–(23)%, and non-GAAP net losses per share of $0.15 in Q3 FY2023. ECF 20-2 at 2; AC ¶ 83. Sumo Logic then publicly disclosed the following **actual** Q3 FY2023 metrics in its Q3 FY2023 earnings announcement and SEC filing: revenue was $79.0 million, its non-GAAP operating margin was (7)%, and it had non-GAAP net losses per share of $0.04. Q3 FY2023 Earnings Call Tr. at 3, 9, 11; ECF 20-4 at 2; AC ¶ 83.

United States District Court
Northern District of California

1      But Defendants have not shown that the allegedly omitted information is contained in the

2  Proxy.  Defendants claim that "Sumo Logic referenced its earnings for every quarter leading up to

3  the Merger in the Proxy" on pages 34 and 37 of the Proxy, *see* Reply at 14, but those pages do not

4  contain the relevant quarterly figures or state that Sumo Logic beat public guidance in Q3

5  FY2023.  Nor can the Court locate this information anywhere in the Proxy.

6      Defendants have also not shown that the Proxy incorporates this information by reference.

7  The Proxy incorporates by reference only "Annual Report on Form 10-K for the fiscal year ended

8  January 31, 2023, filed on March 16, 2023; and Current Reports on Form 8-K filed on February 9,

9  2023, February 9, 2023, and February 24, 2023."  Proxy at 105; *see* Reply at 14.  Defendants have

10  not provided the Court with any "Current Reports on Form 8-K" from February 9, 2023 or

11  February 24, 2023.  *See* ECF No. 20 (seeking judicial notice of exhibits to Forms 8-K filed on

12  August 25, 2022 at ECF No. 20-2, December 5, 2022 at ECF No. 20-4, and March 7, 2023 at ECF

13  No. 20-6).  The Proxy also incorporates by reference "additional documents that we may file with

14  the SEC between the date of this proxy statement and the earlier of the date of the special meeting

15  or the termination of the merger agreement."  Proxy at 105.  But the Proxy was filed with the SEC

16  on April 5, 2023, so this statement also does not incorporate by reference the Form 8-K exhibits at

17  ECF Nos. 20-2, 20-4, and 20-6, which were all filed before the Proxy.  Defendants do provide the

18  Court with the Form 10-K filed on March 16, 2023 incorporated by reference into the Proxy.  *See*

19  ECF No. 20-7.  However, Defendants have not identified, and the Court cannot find in the 10-K,

20  relevant quarterly financial metrics or information conveying that Sumo Logic beat public

21  guidance in Q3 FY2023.

22      Because of this absence of information, the Court finds that Plaintiffs have plausibly

23  alleged that Statement 4 misleadingly omits that Sumo Logic beat public guidance in Q3 FY2023.

24  *Vargas*, 2024 WL 413454, at *8–9 (omitted details of the company's positive ARR growth trends,

25  which the company allegedly described as the "'best' metric and indicator of the trajectory of the

26  business," to be material, in light of disclosures in the proxy about negative revenue performance);

27  *Campbell*, 916 F.3d 1121, 1124–25 (denying motion to dismiss where the proxy disclosed gross

28  profit projections, but omitted significantly lower net income/loss projections and other

United States District Court
Northern District of California

30

1    information necessary to independently calculate those figures).

2          The Court acknowledges that the relevant quarterly financial results were disclosed in

3    publicly and readily available SEC filings and on investor calls.  *See* ECF Nos. 20-2, 20-4, 20-5,

4    20-6.  However, because the information is not contained in the Proxy, Plaintiffs have alleged

5    enough for this claim to move forward.  *Shaev v. Saper*, 320 F.3d 373, 381 (3d Cir. 2003)

6    ("Material not included in the proxy statement is generally not charged to the knowledge of the

7    stockholder."); *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1199–200 (2d

8    Cir. 1993); *cf. Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008) ("investors are not

9    generally required to look beyond a given document to discover what is true and what is not.").

10   Two of Defendants' cited cases, *Sona Nanotech*, 562 F. Supp. 3d at 726, and *Chu*, 100 F. Supp. 2d

11   at 834, are distinguishable as 10(b) cases.  Furthermore, *PharMerica Corp.*, also cited by

12   Defendants, is distinguishable on the facts because there, the Forms 8-K were incorporated by

13   reference into the Proxy.  2019 WL 4645583, at *6–7.

14         Plaintiffs' Statement 5 claim fails for similar reasons.  Here, Sumo Logic disclosed the

15   following Q4 FY2023 ***projections*** in its Q3 FY2023 earnings announcement: total revenue of

16   between $77–78 million, a non-GAAP operating margin of (14)–(13)%, and non-GAAP net losses

17   per share of $0.09–$0.08 in Q4 FY2024.  AC ¶ 86; ECF No. 20-4.  Sumo Logic then publicly

18   disclosed the following ***actual*** Q4 FY2023 metrics in its Q3 FY2023 SEC filing: revenue was

19   $79.8 million, its non-GAAP operating margin was (5)%, and it had non-GAAP net losses per

20   share of $0.03.  AC ¶ 87; ECF No. 20-6.  Like the Q3 projections and results at issue in statement

21   4, the Q4 FY2023 projections and results at issue in Statement 5 were all publicly disclosed in

22   Sumo Logic's 8-K disclosures.  ECF Nos. 20-4, 20-6.  But, as with Statement 4, the Proxy does

23   not include or incorporate by reference the relevant financial information or that Sumo Logic beat

24   public guidance in Q4 FY2023.

25         Thus, the Court finds that Plaintiffs have adequately alleged that Statements 4 and 5 are

26   false or misleading statements.  Accordingly, the Court DENIES Defendants' motion to dismiss

27   Plaintiffs' Section 14(a) claim for Statements 4 and 5 on this ground.

28   \\

United States District Court
Northern District of California

### E.    Negligence

Defendants argue that "Sumo Logic's challenged statements are also immune because Plaintiffs fail to plead with particularity that Defendants negligently issued a false or misleading Proxy." Mot. at 21.  Defendants make two arguments, that "the Complaint engages in conclusory group-pleading" and that "Plaintiffs do not plead with particularity the duty that was owed them by Defendants, much less how Defendants failed to fulfill such duty." *Id.* at 21–22.

Plaintiffs respond that the Amended Complaint alleges that Sayar and Grierson caused the Proxy (and its alleged false statements) to be disseminated to the shareholders.  Opp. at 17.  Plaintiffs also argue that Defendants "owed a duty not to solicit shareholders with a proxy that omitted any material fact necessary in order to make the statements therein not false or misleading." *Id.*; *see* AC ¶ 106.

As discussed above, the Court finds that Section 4(b)(1) and Rule 9(b) apply because Plaintiffs' claims are grounded in fraud.  *Finjan*, 58 F.4th 1048.  Under Rule 9(b), the complaint must contain "individualized allegations of negligence." *Mehedi*, 2023 WL 3592098, at *14.  However, the Section 4(b)(2) scienter requirement does not apply to Section 14(a) claims.  *See id.*  "For each Defendant, Plaintiff[s] must allege the duty that they owed to the Plaintiff[s] and how that duty was breached." *Id.*  Furthermore, the "allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Finjan*, 58 F.4th at 1057 (internal quotations omitted).

"[N]egligence in a securities action depends on whether defendants exercised reasonable prudence in their actions and inactions." *Varjabedian v. Emulex Corp.*, No. SACV 15-00554-CJC (JCGx), 2020 WL 1847708, at *10 (C.D. Cal. Feb. 25, 2020), *aff'd sub nom. Mutza v. Emulex Corp.*, 843 F. App'x 951 (9th Cir. 2021).  "Under Ninth Circuit case law, a plaintiff need only allege that defendants should have been aware of the statement's falsity, rather than alleging that defendants knew that the statement was false." *Original Sixteen to One Mine, Inc. v. Quartzview, Inc.*, No. 2:23-CV-00376-TLN-DB, 2024 WL 1344596, at *6 (E.D. Cal. Mar. 29, 2024) (quoting *Blessing v. Plex Sys., Inc.*, No. 21-CV-05951-PJH, 2021 WL 6064006, at *5 (N.D. Cal. Dec. 22,

United States District Court
Northern District of California

2021)); *see Varjabedian v. Emulex Corp.*, 888 F.3d 399, 407–08 (9th Cir. 2018).

As an initial matter, Plaintiffs have not plausibly alleged that the Projection Statements (Statements 1–3 and 6) are materially false or misleading, and thus have not plausibly alleged a breach of any duty not to make a false or misleading statement.  However, as discussed above, Plaintiffs have adequately alleged that Statements 4 and 5 are false or misleading because Defendants omitted material facts from those statements.  Thus, the Court must assess Plaintiffs' allegations of negligence with respect to those statements.

The Amended Complaint alleges that "[b]y virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy."  AC ¶ 108.  Plaintiffs allege that Defendants breached that duty when "Defendants knowingly made untrue, misleading, or omissive statements of material fact in the Proxy, in order to induce Sumo Logic stockholders to vote in favor of the Merger."  AC ¶ 109.  As to the individual defendants, Sayar and Grierson, the Amended Complaint alleges that they "had direct and supervisory involvement in the negotiation of the Merger and the preparation of the Projections" and were involved in "negotiating, reviewing, and approving the Merger."  AC ¶¶ 116–17.  The Amended Complaint also alleges that Sayar signed the Proxy.  *Id.*  ¶¶ 114–16.

These allegations do not plead negligence with the particularity required by Rule 9(b).  Plaintiffs do allege some facts specific to certain defendants, e.g., that Sayar signed the Proxy.  *Id.*  ¶ 116.  However, each of Plaintiffs' allegations simply list general duties inherent to the positions of CEO and CFO.  Plaintiffs make no allegations as to what would have been reasonably prudent under the circumstances and what Sayar and Grierson did or failed to do that fell short of reasonable prudence.  Specifically, missing is any allegation that Defendants were aware of the alleged omissions, or that the omissions were so obvious that they must have been aware of them.  It cannot simply follow from a job description of their positions that Sayar and Grierson are expected to know that an omission is materially false or misleading.  To allow such conclusory allegations to survive the pleadings stage would be to do away with the Section 14(a) negligence standard entirely.

1    Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 14(a)

2    claim for all statements on this ground WITH LEAVE TO AMEND.

3    **F.    Loss Causation**

4    According to Defendants, Plaintiffs put forth three alternative scenarios that might have

5    occurred absent the alleged misstatements and omissions: (1) Francisco Partners would have been

6    forced to increase its offer; (2) another bidder would have made a superior offer; or (3)

7    stockholders would have kept their shares in a company whose value was greater than the Merger

8    price.  AC ¶ 95.

9    Defendants argue that all three theories fail.  First, Defendants argue that "[a]ny contention

10   that Francisco Partners 'would have . . . increase[d] its offer,' is pure speculation."  Mot. at 23

11   (quoting AC ¶ 94).  Second, Defendants acknowledge a "interested suitor"—Sponsor A—had a

12   higher offer amount, but merely 'expressed a ***theoretical*** ability to ***potentially*** offer a price of

13   approximately $13.00 in cash per share' and came nowhere close to actually making that or any

14   other actionable bid with terms superior to the Merger."  *Id.* (quoting Proxy at 41–42) (emphasis

15   added).  Third, Defendants argue that "there is no factual support for the contention that Sumo

16   Logic's standalone plan offered stockholders greater value such that a majority of them would

17   have voted against the Merger."  *Id.* at 24.

18   Plaintiffs argue in response that "$12.05 Merger Consideration was less than Sumo's

19   $12.18 closing price on the day before the merger announcement, ¶51, evincing a clear loss

20   suffered by shareholders."  Opp. at 23.  Plaintiffs argue that "the Complaint sufficiently alleges

21   that the alternative of Sumo continuing as an independent entity "would have created more

22   shareholder value than" the merger."  *Id.* at 24.  Plaintiffs argue that  "Sponsor A's indication of

23   interest in a transaction at around $13.00/share is evidence that another company actually assessed

24   Sumo's shares at a higher value at the time of the merger."  *Id.* at 25 (quotations omitted, cleaned

25   up).

26   Loss causation is defined as the plaintiff's "burden of proving that the act or omission of

27   the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover

28   damages."  15 U.S.C. § 78u-4(b)(4).  "This inquiry requires no more than the familiar test for

United States District Court
Northern District of California

proximate cause." *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). "To prove loss causation, plaintiffs need only show a causal connection between the fraud and the loss." *Id.* (internal quotations omitted).

Economic loss in a § 14(a) case may be predicated on a theory that "the merger resulted in a reduction of the earnings or earnings potential of [shareholders'] holdings[,]" or a theory that "the terms of the merger at the time it was approved" were unfair. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389 (1970). "Multiple courts have also found that where . . . a plaintiff asserts that shareholders were misled into approving an acquisition that undervalued the company, loss causation is adequately alleged." *Baum*, 408 F. Supp. 3d at 92 (collecting cases). Courts often look to "the actual market price of [company's] shares on the date of the entry into the merger agreement." *Ocera*, 806 F. App'x at 605; *Hot Topic*, 2014 WL 7499375, at *10 (loss causation alleged where plaintiff alleged company was valued at $16.40 per share and the merger price was $14.00 per share); *Azar v. Blount Int'l, Inc.*, No. 3:16-CV-483-SI, 2017 WL 1055966, at *11 (D. Or. Mar. 20, 2017).

Here, the Amended Complaint alleges that on February 8, 2023, Sumo Logic's stock price closed at $12.18 per share. AC ¶ 51. The Amended Complaint also alleges that the share price for the merger was $12.05 per share. *Id.* ¶¶ 2, 51. This difference in share price is enough to allege that the company was undervalued. *Ocera*, 806 F. App'x at 605.

Defendants argue that "Plaintiff Kapil clearly did not believe the value of his Sumo Logic shares was greater than the Merger price" because he "sold thousands of Sumo Logic shares ***below the Merger price of $12.05.***" Reply at 2 (emphasis in original). This could be a probative fact at a later stage, but the Court cannot use this fact to price the shares below $12.05 without weighing evidence and engaging in speculation. *Ocera*, 806 F. App'x at 605.

Defendants also urge the Court to compare the merger price to the pre-leak stock price. According to Defendants, the January 23, 2023 article published by *The Information* led to Sumo Logic's unaffected stock price increasing from $7.67 per share to $12.18 on February 8, 2023, the day before the board approved Francisco Partners' bid to acquire Sumo Logic. Mot. at 5; AC ¶¶ 40, 51; ECF No. 11 (Stock Price Data); ECF No. 20-12 (Stock Price Chart). But Defendants'

cases do not support using the pre-leak stock price for a loss causation analysis. In *Gray v. Wesco Aircraft Holdings, Inc.*, the court addressed price increase in response to a leak in the context of whether a statement was false, but not as part of its loss causation analysis. 454 F. Supp. 3d 366, 398 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021). *Kuebler v. Vectren Corp.* also discusses share price increase due to media reports in its factual background, but the court found no loss causation because plaintiffs did not "allege the existence of a viable superior offer," not because of the pre-report price. 13 F.4th 631, 635 (7th Cir. 2021). Neither case clearly holds that, or even squarely addressed whether or how, a Court should use a pre-leak stock price in its loss causation analysis.

Thus, the Court finds that Plaintiffs have plausibly alleged economic loss as required for loss causation. However, because Plaintiffs have not plausibly alleged that Defendants made any false or misleading statements, they similarly fail to plead a proximate or causal connection between the alleged fraud and the economic loss. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 14(a) claim for all statements on this ground WITH LEAVE TO AMEND.

## G. Section 20(a) Violation

Plaintiffs allege a Section 20(a) claim against individual defendants Sayar and Grierson. AC ¶¶ 113–19. Section 20(a) requires underlying primary violations of the securities laws. *Rigel*, 697 F.3d at 886; *Golub*, 372 F. Supp. 3d at 1052. Because Plaintiffs have failed to adequately plead a violation of the federal securities laws, it follows that Plaintiffs have failed to adequately plead violations of Section 20(a). Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 20(a) claim on this ground for all statements with leave to amend.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' request for judicial notice is GRANTED.

2. Defendants' motion to dismiss Plaintiffs' claims related to Statements 1–3 and 6 for failure to plead objective falsity is GRANTED WITH LEAVE TO AMEND.

3. Defendants' motion to dismiss Plaintiffs' claims related to Statements 1–3 and 6 for

United States District Court
Northern District of California

36

failure to plead subjective falsity is GRANTED WITH LEAVE TO AMEND.

4. Defendants' motion to dismiss Plaintiffs' claims related to Statements 1–3 and 6 on the grounds that they are subject to the PSLRA safe harbor is GRANTED WITH LEAVE TO AMEND.

5. Defendants' motion to dismiss Plaintiffs' claims related to Statements 4 and 5 for failure to plead actionable omissions is DENIED.

6. Defendants' motion to dismiss Plaintiffs' claims related to all statements for failure to plead negligence is GRANTED WITH LEAVE TO AMEND.

7. Defendants' motion to dismiss Plaintiffs' claims related to all statements for failure to plead loss causation is GRANTED WITH LEAVE TO AMEND.

Any amended complaint shall be filed within 60 days of the entry of this order.  The amended complaint shall include a chart listing numerically each alleged false or misleading statement, the speaker, date, and reason for claim of falsity.  The chart shall also cite the paragraphs in the amended complaint where the allegations are made.  Plaintiffs shall also provide the Court a redlined version of the amended complaint.

Dated: June 28, 2024

_____

BETH LABSON FREEMAN
United States District Judge