1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| JOSEPH MICHEL, et al., | Case No.  23-cv-03665-BLF |
| Plaintiffs, |  |
| v. | **ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| SUMO LOGIC, INC., et al., |  |
| Defendants. | [Re:  ECF No. 48] |

This is a putative class action alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Sumo Logic, Inc. ("Sumo Logic") and Ramin Sayar ("Sayar") (collectively, "Defendants"). *See* ECF 45 ("Second Amended Complaint" or "SAC"). Before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint. ECF 48 ("Mot.").

For the reasons explained below, Defendants' Motion to Dismiss is GRANTED IN PART WITH LEAVE TO AMEND and DENIED IN PART.

## I.    BACKGROUND

### A.    The Parties

Sumo Logic is a California-based software as a service ("SaaS") company that helps organizations to ensure the security and reliability of cloud applications, protect against security threats, and perform security analysis and forensics. ECF 45, Second Amended Complaint ("SAC") ¶ 17. Sayar was Sumo Logic's Chief Executive Officer and served as a member of Sumo Logic's Board of Directors (the "Board") at all relevant times of the lawsuit. *Id.* ¶ 16. Plaintiffs allege that they were, at all relevant times, holders of Sumo Logic common stock. *Id.* ¶ 14.

**B.    IPO to Acquisition**

In September 2020, Sumo Logic completed its initial public offering, closing at $22.00 per share. SAC ¶ 18. Its common stock was listed on the Nasdaq Global Select Market under the symbol "SUMO." *Id.* ¶ 15.

In June 2022, Francisco Partners Management, L.P. ("Francisco Partners") submitted a non-binding proposal to acquire Sumo Logic for $11.00 per share of Sumo Logic's common stock, which Sumo Logic considered and rejected because the proposal "was not at a compelling valuation." *Id.* ¶¶ 20, 22.

On August 25, 2022, Sumo Logic announced its financial results for the second quarter of fiscal year 2023. *Id.* ¶ 24. Sumo Logic exceeded the publicly disclosed guidance in Q2 2023 on three key metrics: total revenue, non-GAAP operating margin, and non-GAAP net loss per share. *Id.* Sumo Logic reported that total revenue grew 26% year-over-year in that quarter and that annualized recurring revenue ("ARR") grew 25% year-over-year from the prior quarter. *Id.* ¶ 28.

On September 20, 2022, Sumo presented its business and financial plan, path to profitability and strategic vision at its investor day. *Id.* ¶ 30. Sayar attended the investor day and the presentation on Sumo Logic's performance in Q2 2023. *Id.* ¶¶ 31-32. Sayar was aware of Sumo Logic's actual results and guidance and would have known when Sumo Logic's actual results exceeded guidance. *Id.* ¶ 33.

On October 3, 2022, the Board met with members of Sumo management to explore the possible retention of an investment bank to provide financial advice in conjunction with third party acquisition offers to Sumo Logic. *Id.* ¶ 34. During the following days, Sumo Logic contacted Morgan Stanley. *Id.* ¶ 35. On November 16, 2022, Sumo Logic formally retained Morgan Stanley as its financial advisor. *Id.*

On November 2, 2022, Francisco Partners made a new non-binding proposal to acquire Sumo Logic at $11.50 per share. *Id.* ¶ 38. After learning of Francisco Partners' renewed interest, on November 4, 2022, the Board delegated authority to its four-director Corporate Governance Committee (the "Governance Committee") to oversee and assist Sumo Logic in exploring and negotiating strategic alternatives. *Id.* ¶ 39. Sayar did not serve on that committee. *Id.* On November

15, 2022, the Corporate Governance Committee determined that Sumo Logic should pursue a targeted process for its acquisition and that the company should discuss with Francisco Partners its renewed proposal. *Id.* ¶ 40.

On December 5, 2022, Sumo Logic announced that its financial results for the third quarter of fiscal year 2023 exceeded publicly disclosed guidance for Q3 2023 on three metrics: "total revenue, non-GAAP operating margin, and non-GAAP net loss per share". *Id.* ¶ 42. Sumo Logic reported that total revenue grew 27% year-over-year in the third quarter. *Id.* ¶ 43. At Sumo Logic's earning call for Q3 2023, Sayar stated the above financial results in his prepared remarks. *Id.* ¶ 46.

During December 2022, the Board directed Morgan Stanley to contact potential acquirers to better understand the prospects on Sumo Logic's acquisition. *Id.* ¶¶ 49–52. From December 14, 2022 to January 5, 2023, Sumo Logic gave presentations on Sumo Logic's business to nine financial sponsors, including Francisco Partners. *Id.* ¶ 52. On January 13, 2023, the Board approved providing a January 2023 long-range plan to Morgan Stanley and potential acquirers. *Id.* ¶ 59. The January 2023 long-range plan assumed a decline in revenue growth to 14% in fiscal year 2024. *Id.*

On January 23, 2023, *The Information* published an article revealing preliminary details of a potential merger. *Id.* ¶ 64. On January 24, 2023, Francisco Partners offered $11.95 per share to acquire Sumo Logic. *Id.* ¶ 67. On January 25, a financial sponsor ("Sponsor D") offered $10.50 per share. *Id.* ¶ 68. The Corporate Governance Committee authorized providing a draft merger agreement to Francisco Partners and Sponsor D. *Id.* ¶ 72. On February 2, 2023, members of Sumo Logic's management met separately with Francisco Partners and Sponsor D, during which the parties discussed Sumo Logic's anticipated business and financial results for the fourth quarter of 2023 fiscal year. *Id.* ¶ 74. Plaintiffs allege that "it is reasonable to infer" that Sayar participated in these meetings because he was the most senior member of Sumo Logic's management. *Id.*

Meanwhile, Sumo Logic urged Francisco Partners to further increase its bid. *Id.* ¶¶ 75–78. On February 3, 2023, Francisco Partners increased its offer to $12.00 per share. *Id.* ¶ 75. On February 8, Francisco Partners further increased its offer to $12.05 per share. *Id.* ¶ 78.

On February 9, 2023, the Board met with Management and Morgan Stanley to consider Francisco Partners' offer. *Id.* ¶ 81. Morgan Stanley presented its opinion to the Board that Francisco

Partners' $12.05 offer was "fair." *Id.* On the same day, Sumo and Francisco Partners signed the Merger Agreement. ¶ 82.

On March 7, 2023, Sumo Logic announced its financial results for the fourth quarter of fiscal year 2023. *Id.* ¶ 84. Sumo Logic reported that it exceeded the publicly disclosed guidance for Q4 2023 on the same key metrics: total revenue, non-GAAP operating margin and non-GAAP net loss per share. *Id.* Sumo Logic also announced a 19% increase in year-over-year revenue, a $4.0 million non-GAAP operating loss, and a negative 5% non-GAAP operating margin. *Id.* ¶ 85.

On April 5, 2023, Sumo Logic filed the Proxy, which was signed by Sayar, with the SEC informing stockholders about the Merger. *Id.* ¶ 88. The Proxy warned Sumo Logic's shareholders that they "should rely only on the information contained or incorporated by reference in this proxy statement in voting [their] shares" at the special meeting on the Merger. *Id.* ¶ 89. The Proxy specified that only the following prior SEC filings of Sumo Logic were incorporated by reference into the Proxy: (1) Annual Report on Form 10-K for the fiscal year ended January 31, 2023, filed on March 16, 2023; and (2) Current Reports on Form 8-K filed on February 9, 2023, February 9, 2023, and February 24, 2023. *Id.* ¶ 90. The Proxy did not incorporate by reference the Form 8-Ks announcing Sumo's results in Q2 2023, Q3 2023, and Q4 2023 or transcripts for the Q2 and Q3 2023 Call. *Id.* ¶ 93.

On May 12, 2023, the merger closed. *Id.* ¶ 94. The closing generated $42.9 million in cash payouts for Sayar. *Id.* ¶ 95.

**C.     Alleged False and Misleading Omissions in the Proxy**

In the SAC, Plaintiffs allege two false or misleading statements in the Proxy.

First, the Proxy states, "[o]n December 5, 2022, Sumo announced earnings for the third quarter of its 2023 fiscal year." SAC ¶ 98 (quoting Proxy at 37). Plaintiffs allege that Sumo Logic misleadingly omitted that it had also exceeded guidance on three key metrics: revenue, non-GAAP operating margin, and non-GAAP net loss per share in Q3 2023. SAC ¶ 98 (citing Proxy at 37). In contrast, Sumo Logic disclosed that the Q2 2023 result outperformed its guidance on the same three metrics. *Id.* ¶ 99 (quoting Proxy at 34). Plaintiffs allege that this omission was material because it downplayed the fact that Sumo Logic was exceeding expectations on all three metrics at the time,

"which would have led Sumo shareholders to wrongly conclude that Sumo's performance and future prospects had deteriorated" during Q3 2023. *Id.* ¶¶ 98, 100–01.

Second, the Proxy states, "Among the potential risks identified by the Sumo Logic Board were . . . Sumo Logic's financial results for the fourth quarter of its 2023 fiscal year, which were below the company's internal forecast and analyst's estimates of Sumo Logic's financial performance on new annual recurring revenue for that period." *Id.* ¶ 104 (quoting Proxy at 45–46). The Proxy omitted the fact that Sumo Logic had beat guidance in Q4 2023." *Id.* ¶ 105. Plaintiffs allege that this statement was materially false and misleading because it "created the false impression that Sumo's performance had further deteriorated in Q4 2023." *Id.* ¶ 105-06.

### D. Procedural History

Plaintiff Joseph Michel ("Michel"), on behalf of himself and a putative class of Sumo Logic stockholders, brought this action on July 25, 2023. ECF 1. Michel did not move to be lead plaintiff. Instead, Armin Wasicek, Devendra Modium, and Ranjit Kapil (collectively, "Plaintiffs"), represented by Michel's same counsel, sought appointment as co-lead plaintiffs. ECF 15. On October 18, 2023, the Court granted their motion. ECF 17. Plaintiffs filed their Amended Complaint on November 20, 2023, alleging that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act based on six misrepresentations and omissions in the Proxy. ECF 18, Amended Complaint ("AC"), ¶¶ 75–92, 104-19. Defendants filed a Motion to Dismiss the Amended Complaint. ECF 19. Plaintiffs opposed. ECF 23. Defendants filed a reply. ECF 30.

On June 24, 2024, the Court granted in part with leave to amend and denied in part Defendants' motion to dismiss the Amended Complaint. *See* ECF 41 ("Order"). In its Order, the Court found that the Amended Complaint sounded in fraud and the Rule 9(b) pleading standard should apply. Order at 12. The Court granted Defendants' motion to dismiss Plaintiffs' claims related to statements 1-3 and 6 for failure to plead objective falsity, subjective falsity and loss causation, and on the grounds that they are subject to the PSLRA safe harbor. *See* Order at 37. The Court denied Defendants' motion to dismiss Plaintiffs' claims related to statements 4 and 5 for failure to plead actionable omissions and loss causation. *See id.* The Court granted Defendants' motion to dismiss with leave to amend Plaintiffs' claims related to all statements for failure to plead

1  negligence. *See id.*

2       On September 27, 2024, Plaintiffs filed the Second Amended Complaint. ECF 45 ("SAC").

3  In the Second Amended Complaint, Plaintiffs focus their claims on what were the fourth and fifth

4  alleged false statements or omissions in the Amended Complaint. *Compare* SAC ¶¶ 98-108 *with*

5  AC ¶¶ 83-87. On October 31, 2024, Defendants filed a motion to dismiss. ECF 48 ("Mot.").

6  Plaintiffs filed an opposition. ECF 50 ("Opp."). Defendants filed a reply. ECF 52 ("Reply"). The

7  Court held a hearing on the motion on February 6, 2025. ECF 54. At the hearing, the Court noted

8  that its previous Order did not fully address whether the alleged omissions were material. ECF 58,

9  Hearing Tr. at 4:14-5:2; *see* Order at 27-31. The Court requested, and the parties provided,

10  supplemental briefing on the materiality of the alleged omissions. *See* ECF 59 ("PSupp. Br."); ECF

11  60 ("DSupp. Br.").

## II.    LEGAL STANDARD

### A. Rule 12(b)(6)

14       "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

15  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force*

16  *v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732

17  (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all

18  well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v.*

19  *BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as

20  true allegations that contradict matters properly subject to judicial notice" or "allegations that are

21  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis.*

22  *Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While a complaint need not

23  contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to

24  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

25  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when

26  it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

27  alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and

28  matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986);

1    N. *Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

2    **B. Rule 9(b) and the Private Securities Litigation Reform Act of 1995**

3    In addition to the pleading standards discussed above, a plaintiff asserting a private securities

4    fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil

5    Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone*

6    *Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state

7    with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also In re VeriFone*

8    *Holdings*, 704 F.3d at 701. That is, "the complaint must allege specific facts regarding the fraudulent

9    activity, such as the time, date, place, and content of the alleged fraudulent representation, how or

10   why the representation was false or misleading, and in some cases, the identity of the person engaged

11   in the fraud." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1065 (N.D. Cal. 2010).

12   Similarly, under the PSLRA "the complaint shall specify each statement alleged to have been

13   misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding

14   the statement or omission is made on information and belief, the complaint shall state with

15   particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

16   The PSLRA further requires that "in any private action arising under this chapter in which

17   the plaintiff may recover money damages only on proof that the defendant acted with a particular

18   state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter,

19   state with particularity facts giving rise to a strong inference that the defendant acted with the

20   required state of mind." *Id.* § 78u-4(b)(2)(A). However, "the subjective falsity required by Section

21   14(e) is not equivalent to the scienter requirement referenced in 15 U.S.C. § 78u-4(b)(2)(A) nor that

22   required by, for example, Section 10(b)." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 (9th Cir.

23   2023). Section 4(b)(2) does not apply" where "an author could negligently state an opinion in which

24   he does not subjectively believe", "even when the challenged statement is a statement of opinion."

25   *Id.* at 1059; *Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2023 WL 3592098, at *13 (N.D. Cal.

26   May 22, 2023).

27   **III.    REQUEST FOR JUDICIAL NOTICE**

28   A court generally cannot consider materials outside the pleadings on a motion to dismiss for

United States District Court
Northern District of California

1    failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which

2    it can take judicial notice without converting the motion to dismiss into one for summary judgment.

3    *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not

4    subject to reasonable dispute" because they are either "(1) generally known within the territorial

5    jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources

6    whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take

7    judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion

8    for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting

9    *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by

10    reference doctrine, courts may consider documents "whose contents are alleged in a complaint and

11    whose authenticity no party questions, but which are not physically attached to the [plaintiff's]

12    pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch

13    v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

14          Defendants request consideration as incorporated by reference in the SAC and/or judicial

15    notice of Exhibits 1-12. ECF 48 at 9; ECF 49-1 to ECF 49-12. Defendants describe these exhibits

16    as "including the Proxy, supplemental disclosures incorporated by reference in the Proxy, Sumo

17    Logic's other relevant SEC filings, its public earnings disclosures, and its historical stock prices,

18    which are readily ascertainable and not subject to reasonable dispute." *Id.*

19          Plaintiffs respond that it is improper to assume the truth of an incorporated document to

20    dispute facts pled in a complaint. Opp. at 3 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d

21    988, 1003, 1014 (9th Cir. 2018)). Plaintiffs argue that the Court cannot accept as true Defendants'

22    factual assertions based on various SEC filings. Opp. at 3-4 (citing *In re Plantronics, Inc. Sec. Litig.*,

23    No. 19-cv-07481-JST, 2022 U.S. Dist. LEXIS 152745, at *16 (N.D. Cal. Aug. 16, 2022)).

24          The Court GRANTS judicial notice of Defendants' exhibits. *See Metzler Inv. GMBH v.

25    Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (granting judicial notice of

26    publicly available financial documents such as SEC filings); *Heliotrope Gen., Inc. v. Ford Motor

27    Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (granting judicial notice of publicly available articles

28    or other news releases of which the market was aware). The Court does not take notice of the truth

United States District Court
Northern District of California

1    of any of the facts asserted in these documents. *See Mehedi*, 2023 WL 3592098, at *5.

2    **IV.    DISCUSSION**

3        **A.  Pleading Standard**

4        As a preliminary matter, the parties disagree as to whether Rule 9(b) or Rule 8(a) applies to

5    the SAC. Defendants argue that Rule 9(b)'s particularity requirement should apply to Plaintiffs'

6    Section 14(a) claim because it still sounds in fraud. Mot. at 11; Reply at 2. Specifically, Defendants

7    argue that the Section 14(a) claims sound in fraud because Plaintiffs allege self-dealing and

8    mismanagement and that their Section 14(a) claims rely on a unified course of fraudulent conduct.

9    Reply at 3-4. In response, Plaintiffs argue that Rule 8(a) applies to the Section 14(a) claim because

10   it is "predicated exclusively on Defendants' negligence . . . not fraud." Opp. at 4.

11       Rule 9(b) applies "where a claim is grounded in fraud or sounds in fraud, even if fraud is not

12   an essential element" of the claim. *Finjan*, 58 F.4th at 1057 (internal quotations omitted). To

13   determine whether a complaint sounds in fraud, the Court "must normally determine, after a close

14   examination of the language and structure of the complaint, whether the complaint 'alleges a unified

15   course of fraudulent conduct' and 'relies entirely on that course of conduct as the basis of a claim.'"

16   *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy*

17   *Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)).

18       Here, the Court finds that Plaintiffs' Section 14(a) claim as pled in the SAC sounds in fraud.

19   Specifically, Plaintiffs allege that Sayar engaged in self-dealing and mismanagement when he

20   "solicited shareholders" to accept an "undervalued price" via a misleading proxy statement and his

21   actions were motivated by a "massive and personally transformative cash payday." *See* SAC ¶¶ 95,

22   126. Plaintiffs also allege that Sayer and the Board together "recommended that Sumo shareholders

23   vote for the Merger," despite knowing the alleged omissions "would have led Sumo shareholders to

24   wrongly conclude that Sumo's performance and future prosects had deteriorated" in Q3 and Q4

25   2023. SAC ¶¶ 101, 104, 107; *see* SAC ¶¶ 106, 117, 141, 148. Accordingly, while Plaintiffs allege

26   that Sayar "should have known" about the alleged omissions in the proxy and had a duty to correct

27   them, SAC ¶¶ 6, 116-23, 141-42, the Court finds that Plaintiffs' Section 14(a) claim sounds in fraud

28   in light of the alleged self-dealing and mismanagement by Sayar and the false impression that Sumo

Logic's performance had further deteriorated in Q4 2023, created by the Proxy statement given by Sayar and the Board. *See Finjan*, 58 F.4th at 1057; *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 n.5 (9th Cir. 2000) (finding allegations of mismanagement and self-dealing sounded in fraud and affirming district court's rejection of arguments that the complaint sounded in negligence). The Court recognizes that Plaintiffs have extensively amended portions of the complaint to lean more heavily on their negligence theory, but they have still failed to sanitize the SAC sufficiently to avoid the pleading requirements of Rule 9(b).

The parties do not dispute that PSLRA's Rule 4(b)(1) pleading standard should apply to the SAC, and that PSLRA's Rule 4(b)(2) pleading standard should not apply to the SAC. *See* Opp. at 4; Reply at 4-5. *Finjan*, 58 F.4th at 1057–58; *Mehedi*, 2023 WL 3592098, at *13 (applying *Finjan* to Section 14(a) claims). "The particularity requirements of Section 4(b)(1) and Rule 9(b) are not identical, but they are similar." *Finjan*, 58 F.4th at 1057.

### B. Count I, Violation of Section 14(a) of the Exchange Act and Rule 14a-9

Plaintiffs allege a claim under § 14(a) and Rule 14a-9 against all Defendants. *See* SAC ¶¶ 137-46. "To state a claim under § 14(a) and Rule 14a-9, a plaintiff must establish that '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.'" *New York City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)). Section 14(a) and Rule 14a-9 also include a loss causation requirement. *Id.*

#### 1. Negligence

In its previous Order, the Court found that Plaintiffs failed to adequately plead negligence with the particularity required by Rule 9(b). Order at 33. The Court reasoned that Plaintiffs failed to allege facts specific to the individual defendants. *See id.* Additionally, the Court found that Plaintiffs failed to allege what would have been reasonably prudent under the circumstances or that Defendants "were aware of the alleged omissions, or that the omissions were so obvious that they must have been aware of them." *Id.*

10

1    Defendants argue that Plaintiffs have still failed to plead negligence in light of the Court's

2    ruling in its previous Order. Mot. at 11-17. In response, Plaintiffs argue that they have adequately

3    alleged that Sayar had a duty to detect and correct material omissions in the proxy that he had

4    personal knowledge of, and that Sayar failed to do so. Opp. at 5-7, 13.

5                    **a.  Negligence Standard**

6        As an initial matter, the parties dispute the correct standard for negligence. Plaintiffs argue

7    that a "should have known" standard should be applied to the claim of negligence. Opp. at 8 (citing

8    *SEC v. Shanahan*, 646 F.3d 536, 544 (8th Cir. 2011)). Plaintiffs contend that the Court incorrectly

9    applied a "recklessness" standard in its prior Order. Opp at 9. In response, Defendants argue that

10   the Court correctly applied the standard for negligence, not "recklessness." Reply at 6 (citing

11   *Varjabedian v. Emulex Corp.*, 888 F.3d 399, 408 (9th Cir. 2018)). Defendants argue that Plaintiffs

12   have not cited any Ninth Circuit authority that "prescribes different negligence standards for Section

13   14(a) claims sounding in fraud." Reply at 6.

14       The Court did not apply a "recklessness" standard in its prior Order. As Plaintiffs

15   acknowledge, the Court "articulated" a "should have known" standard in its prior Order. Opp. at 9

16   (citing Order at 32). As explained in its prior Order, "[u]nder Ninth Circuit case law, a plaintiff need

17   only allege that defendants should have been aware of the statement's falsity, rather than alleging

18   that defendants knew that the statement was false." Order at 32 (citing *Original Sixteen to One Mine,

19   Inc. v. Quartzview, Inc.*, No. 2:23-CV-00376-TLN-DB, 2024 WL 1344596, at *6 (E.D. Cal. Mar.

20   29, 2024) and *Blessing v. Plex Sys., Inc.*, No. 21-CV-05951-PJH, 2021 WL 6064006, at *5 (N.D.

21   Cal. Dec. 22, 2021)); *see Varjabedian*, 888 F.3d at 407–08; *see also Brown v. Brewer*, No. CV06-

22   3731-GHK SHX, 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010) ("[A] director may be found

23   negligent under Section 14(a) for a failure to notice material omissions upon reading a proxy

24   statement."); *Wilson v. Great Am. Indus.*, 855 F.2d 987, 995 (2d Cir. 1988) ("As a matter of law,

25   the preparation of a proxy statement by corporate insiders containing materially false or misleading

26   statements or omitting a material fact is sufficient to satisfy [the negligence standard].").

27                    **b.  Plaintiffs have still failed to adequately plead negligence.**

28       Defendants argue that Plaintiffs have still failed to adequately plead negligence. Mot. at 11-

United States District Court
Northern District of California

17. Defendants contend that Plaintiffs' allegations are still "conclusory" and do not support the allegation that "the alleged omission in the Proxy must be the result of a breach of Sayar's duty of care." Mot. at 13. Defendants further contend that Plaintiffs have still failed to plead that Sayar was aware of the alleged omissions or that the alleged omissions were "so obvious" that Sayar must have been aware of them. *Id.* Defendants further argue that Plaintiffs cannot plausibly allege that Sayar intentionally misled stockholders by rushing the sale of Sumo Logic at a price lower than the market because doing so would be against Sayar's own interest. Mot. at 16-17.

In response, Plaintiffs argue that the SAC has pled "what would have been reasonably prudent [for Sayar] under the circumstances," and that Sayar's failure to correct the alleged omissions fell short of reasonable prudence. Opp. at 6 (citing Order at 32). Plaintiffs contend the SAC has alleged that "[Sayar] negligently failed to fulfill [his] duty to carefully review the proxy because had [he] done so, [he] would have noticed and corrected the material omissions." Opp. at 8. Plaintiffs argue that a reasonable inference should be drawn that Sayar would have detected and corrected the Q3 and Q4 2023 omissions had he fulfilled his duty of care and carefully reviewed the Proxy. Opp. at 10-11. Plaintiffs further explain that they do not allege Sayar "intentionally" omitted the information to mislead shareholders. Opp. at 12-13.

The SAC alleges that Sayar had personal knowledge about the Q3 and Q4 2023 results because he participated in the preparation of Sumo's press releases and he participated in the Q3 2023 and Q4 2023 earnings calls. SAC ¶¶ 6, 111-12, 120. Plaintiffs allege that "Sayar had a duty under the federal securities laws, the Merger Agreement, and Sumo's 2022 Code of Business Conduct and Ethics, to carefully read and review the Proxy before signing it, and ensure that it fully disclosed all material facts." *Id.* ¶¶ 6, 111, 114, 117. The SAC alleges that "Sayar had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Sumo with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that are materially misleading," and that "Sayar had direct and supervisory involvement in the evaluation and negotiation of the Merger and the preparation of the Proxy." *Id.* ¶¶ 146, 150. The SAC further alleges that Sayar failed to "exercise reasonable care in fulfilling his duty to carefully read and review the Proxy," and signed, without correcting, the Proxy containing material

1    omissions "concerning the Q3 2023 and Q4 2023 results about which he had personal knowledge."

2    *Id.* ¶¶ 6, 116-17, 141-42. As to Sumo Logic, Plaintiffs allege that it is also liable for Sayar's failure

3    to exercise reasonable care. *Id.* ¶ 6.

4          The Court finds that Plaintiffs have still failed to adequately plead negligence. Plaintiffs

5    primarily argue that they have adequately pled negligence under Rule 8. Opp. at 5, 13. As discussed

6    above, the Court finds that Rule 9(b) and Section 4(b)(1) apply because Plaintiffs' claims sound in

7    fraud. *See Finjan*, 58 F.4th at 1057. And although Plaintiffs argue that they meet the pleading

8    standard, the Court finds Plaintiffs have failed to plead negligence with the particularity required by

9    Rule 9(b) or Section 4(b)(1). Specifically, Plaintiffs have still failed to allege that Sayar "should

10   have been aware of" the alleged omissions that Sumo Logic beat guidance on the three key metrics

11   concerning Sumo Logic's Q3 and Q4 2023 performance. *Blessing*, 2021 WL 6064006, at *5. Indeed,

12   Sayar had previously publicly stated that the ARR growth was "the best metric to look at in terms

13   of . . . the leading indicator of growth," and Sumo Logic published that the ARR growth had slowed

14   in Q3 and Q4 2023. Mot. Ex. 8 (Sumo Logic's Q3 2023 earnings call transcript) at 13; Mot. Ex. 7

15   (Q2 2023 Earnings Release) at 1; Mot. Ex. 11 (Q3 2023 Earnings Release) at 1; Mot. Ex. 10 (Q4

16   2023 Earnings Release) at 1. The SAC contains only Plaintiff's conclusory allegations that Sayar

17   had a duty of care to review the Proxy for accuracy under securities laws, and that Sayar breached

18   that duty when he signed the Proxy that omitted the guidance beat in Q3 and Q4 2023 that he had

19   knowledge about. *See, e.g.,* SAC ¶¶ 116-20. The SAC has not pled facts as to why, in reviewing the

20   Proxy, Sayer "should have noticed" the alleged omissions were false, especially in light of his

21   knowledge of the downward trend in the ARR growth and the Proxy's explicit statement that Sumo

22   Logic's results in Q4 2023 were "below the company's internal forecast." SAC ¶ 104 (citing Proxy

23   at 45-46); *see* SAC ¶¶ 118, 120; *see also Ocera*, No. 17-CV-06687-RS, 2018 WL 7019481, at *10

24   (dismissing Section 14 claim for failure to allege facts suggesting defendants were negligent).

25         The SAC also does not contain specific facts regarding how Sayar was negligent in carrying

26   out his duty. Here, Plaintiffs do not allege that Sayar failed to review the Proxy in its entirety, but

27   rather they allege Sayar should noticed the Q3 and Q4 2023 omissions and corrected them. *See,*

28   SAC ¶ 122. Plaintiffs have failed to allege why Sayar or a reasonably prudent CEO would have

United States District Court
Northern District of California

13

1    recognized that omitting that Sumo Logic beat guidance on the three metrics concerning Sumo

2    Logic's performance in Q3 and Q4 2023 would be misleading when Sayar and Sumo Logic had

3    publicly announced a declining growth rate in ARR. On this basis, the Court finds that Plaintiffs

4    have not plausibly pled negligence. *See Mehedi v. View, Inc.*, No. 21-cv-06734-BLF, 2024 WL

5    3236706, at *14 (N.D. Cal. June 28, 2024) (dismissing Section 14(a) claim for failure to plead

6    negligence); *see also Finjan*, 58 F.4th at 1064 (affirming dismissal for failure to plead negligence).

7        The Court notes that Plaintiffs have amended their complaint twice, and granting leave to

8    amend for a third time is rare. Nonetheless, now that Plaintiffs are clearly advised that Rule 9(b)

9    will apply, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 14(a) claim for

10   failure to plead negligence WITH LEAVE TO AMEND.

11            **2.  Omission**

12       Defendants argue that the two statements did not contain omissions, that any omission would

13   not be misleading or material, and that the statements were subject to the PSLRA safe harbor as

14   forward-looking. Mot. at 18-22. In response, Plaintiffs argue that the two statements concerning

15   Sumo Logic's Q3 2023 and Q4 2023 financial results omitted material facts that caused the

16   statements to be false or misleading. Opp. at 13-20. The Court addresses the parties' arguments in

17   turn.

18            **a.  The two statements did omit that Sumo Logic beat guidance in Q3 and Q4**

19                **2023.**

20       Defendants argue that the Proxy did not omit Sumo Logic's Q3 and Q4 2023 earnings

21   because the "information was publicly disclosed." Mot. at 18. Defendants argue that the Proxy

22   expressly directed shareholders to consider Sumo Logic's historical financial disclosures in

23   evaluating the company's prospects. *See id.* at 19. In response, Plaintiffs argue that the Proxy failed

24   to disclose historical facts about Sumo Logic's past performance in Q3 and Q4 2024. Opp. at 14.

25       To state a Section 14(a) claim based on an omission, Plaintiffs must plead facts showing that

26   the Proxy "omitted to state a material fact necessary in order to make the statements made, in the

27   light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b)(1)(B).

28   "[H]alf-truths—representations that state the truth only so far as it goes, while omitting critical

United States District Court
Northern District of California

qualifying information—can be actionable misrepresentations." *Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1125 (8th Cir. 2019); *Vargas v. Citrix Sys., Inc.*, No. 22-CV-62327-RAR, 2024 WL 413454, at *8–9 (S.D. Fla. Feb. 3, 2024) ("by disclosing negative factors regarding quarterly results, Defendants were obligated to similarly disclose material positive trends as well.").

Concerning the Q3 2023 omission, Plaintiffs allege that the Proxy includes explanations that the three key metrics (total revenue, non-GAAP operating margin, and non-GAAP loss per share) exceeded its public guidance in Q2 2023 but omits that same disclosure from its statements on its performance in Q3 2023. A comparison of the explanations is shown in the chart below:

| Proxy's Statement Regarding Q2 FY2023 | Proxy's Statement Regarding Q3 FY2023 |
|---|---|
| On August 25, 2022, Sumo Logic announced earnings for the second quarter of its 2023 fiscal year. *Sumo Logic exceeded the guidance that it had provided to the investment community with respect to Sumo Logic's total revenue, non-GAAP operating margin and non-GAAP net loss per share for that quarter.* Proxy at 34. | On December 5, 2022, Sumo Logic announced earnings for the third quarter of its 2023 fiscal year. Proxy at 37. |

*See* SAC ¶¶ 98-99; ECF 45-1; *compare* Proxy at 34 *with* Proxy at 37.

Concerning the Q4 2023 omission, Plaintiffs allege that the Proxy "falsely impl[ied] that Sumo's results" in that quarter "were exclusively negative" by stating its performance was "below the company's internal forecast." SAC ¶ 104. Plaintiffs allege that the Proxy omitted that Sumo Logic "exceeded guidance on the same three key metrics" in Q4 2023. *See id.* ¶ 105. A comparison of the explanations is shown in the chart below:

| Proxy's Statement Regarding Q2 FY2023 | Proxy's Statement Regarding Q4 FY2023 |
|---|---|
| On August 25, 2022, Sumo Logic announced earnings for the second quarter of its 2023 fiscal year. *Sumo Logic exceeded the guidance that it had provided to the investment community with respect to Sumo Logic's total revenue, non-GAAP operating margin and non-GAAP net loss per share for that quarter.* Proxy at 34. | Sumo Logic's financial results for the fourth quarter of its 2023 fiscal year, which were below the company's internal forecast and analyst's estimates of Sumo Logic's financial performance on new annual recurring revenue for that period. Proxy at 46. |

*See* SAC ¶ 105; ECF 45-1; *compare* Proxy at 34 *with* Proxy at 46.

The Court finds that the Proxy did omit information concerning Sumo Logic's performance

United States District Court
Northern District of California

in Q3 2023 and Q4 2023. Defendants have not shown that the allegedly omitted information was contained in the Proxy or documents expressly incorporated in it. Defendants' argument that alleged omissions concern publicly disclosed information is contradicted by the Proxy itself and relates more to materiality. Mot. at 18. The Proxy instructs the shareholder to "rely only on the information contained or incorporated by reference in this proxy statement in voting your shares." SAC ¶ 89; Proxy at 106. While the Proxy instructs Sumo Logic's shareholders to evaluate the Proxy "in conjunction with Sumo Logic's historical financial statements," the statement is generic and the Proxy did not expressly incorporate the Form 8-Ks containing Sumo Logic's public guidance results in Q3 2023 and Q4 2023. *See In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 817 (C.D. Cal. 2011) (finding boilerplate and generic warning language in public statements defective). Accordingly, Defendants have not shown that the Proxy incorporates the alleged omissions by reference.

Defendants also argue that there was no omission because the allegedly omitted information was publicly available. Mot. at 18. Although it is uncontroverted that Sumo Logic's Q3 and Q4 financial results were readily available in Sumo Logic's SEC filings and public statements, the Court finds that this argument pertains more to materiality as opposed to a determination of whether there was an omission. *Textainer*, cited by Defendants, discusses the materiality of an omission of publicly available information, *In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *6 (N.D. Cal. Dec. 12, 2005), as does *Sanchez v. IXYS Corp.*, No. 17-cv-06441-WHO, 2018 WL 4787070 at *3 (N.D. Cal. Oct. 2, 2018).

Accordingly, the Court DENIES Defendants' motion to dismiss on the basis that there were omissions.

### b.  Plaintiffs have failed to adequately allege that the alleged omissions were materially misleading.

The Court did not thoroughly consider the materiality issue in its prior Order. The Court does so here.

"For a statement to be false or misleading, it must 'directly contradict what the defendant knew at that time' or 'omit material information.'" *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29

1   F.4th 611, 619 (9th Cir. 2022) (quoting *Khoja*, 899 F.3d at 1008–09); *see* 15 U.S.C. § 78u-

2   4(b)(1)(A)–(B). "[I]n other words it must affirmatively create an impression of a state of affairs that

3   differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280

4   F.3d 997, 1006 (9th Cir. 2002). "An omitted fact is material if there is a substantial likelihood that

5   a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v.*

6   *Northway, Inc.*, 426 U.S. 438, 449 (1976). To allege materiality of the omissions, a plaintiff must

7   plead facts that plausibly show a "substantial likelihood that the disclosure of the omitted fact would

8   have been viewed by the reasonable investor as having significantly altered the 'total mix' of

9   information made available." *Id.*

10       Defendants argue that Plaintiffs have still failed to plead the alleged omissions are

11  "materially misleading." Reply at 11; ECF 58 (Hearing Tr.) at 48:22-49:1. Defendants argue that

12  Plaintiffs have still failed to plead how the Proxy misrepresented Sumo Logic's Q3 and Q4 2023

13  results. Mot. at 19; DSupp. Br. at 3. Defendants contend that even if the Proxy failed to state Sumo

14  Logic's performance in Q3 and Q4 2023 relative to public guidance, it did not misrepresent the

15  company's performance in those two quarters. *See* Mot. at 19; DSupp. Br. at 3. Defendants further

16  argue that the alleged omissions were "entirely consistent" with Sumo Logic's deteriorating future

17  prospects in Q3 and Q4 2023 because the ARR growth declined in each quarter of 2023 and revenue

18  growth was also slowing. DSupp. Br. at 3; *see* Mot. at 20; Reply at 12. Defendants further argue

19  that Plaintiffs have failed to plead that the alleged omissions were material because the omitted

20  information was publicly available and it did not alter the "total mix" of information available to the

21  shareholders. Mot. at 20-21 (citing *Textainer*, 2005 WL 3801596, at *6 and *Sanchez*, 2018 WL

22  4787070, at *3); Reply at 11; DSupp. Br. at 1-2.

23       In response, Plaintiffs argue that the Proxy's failure to disclose the guidance beat on the three

24  key metrics in Q3 and Q4 2023 was materially misleading. Opp. at 18. Specifically, Plaintiffs argue

25  that Sumo Logic's performance on the three metrics was meaningful because the Proxy disclosed

26  that Sumo Logic exceeded public guidance on the three key metrics in Q2 2023. Opp. at 18-19;

27  PSupp. Br. at 1. Plaintiffs argue that the alleged omissions were misleading because "they were half-

28  truths." PSupp. Br. at 1; *see* Opp. at 18. Specifically, Plaintiffs argue that the Proxy disclosed Sumo

Logic's guidance beat on the three key metrics in Q2 2023 but omitted that it also beat public guidance in Q3 and Q4 2023. Opp. at 18-19; PSupp. Br. at 1. Plaintiffs further contend that Defendants have failed to establish that the decline in ARR necessarily suggested that Sumo Logic's business was deteriorating or that the ARR trends were exclusively negative. *See* Opp. at 19; PSupp. Br. at 1. Plaintiffs further argue that the alleged omissions were material because they altered the "total mix" of information available to the shareholders. Opp. at 16-17 (citing *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 887 (9th Cir. 2008)). Specifically, Plaintiffs argue that the Proxy instructed the shareholders to "only" consider the information contained or incorporated by reference in the Proxy, and the Proxy "did not incorporate Sumo's Q2, Q3 or Q4 2023 results by reference." Opp. at 16 (citing Proxy at 106 and); PSupp. Br. at 3.

Plaintiffs allege that the Proxy instructed the shareholder that they "should rely only on the information contained or incorporated by reference in this proxy statement in voting [their] shares." SAC ¶ 89 (citing Proxy at 106). Plaintiffs also allege that, while the Form 8-Ks filed by Sumo Logic with respect to its Q2, Q3 and Q4 2023 results were in the public domain, the Form 8-Ks expressly provided that those results "shall not be incorporated by reference in any future filing under the Exchange Act . . .   unless expressly incorporated by specific reference." SAC ¶¶ 27, 45, 86. Concerning the Q3 2023 omission, Plaintiffs allege that "[a] reasonable Sumo shareholder would have assumed that if the proxy did not disclose a guidance beat for Q3 2023 like it did for Q2 2023, then it must be because results in Q3 2023 did not beat guidance." SAC ¶ 101. Concerning the Q4 2023 omission, Plaintiffs allege that the results were "below the company's internal forecast." SAC ¶ 104 (quoting Proxy at 45-46). Plaintiffs argue that the alleged Q4 2023 omission "created the false impression that Sumo's performance had further deteriorated in Q4 2023, and was exclusively negative in Q4 2023, which would have led Sumo shareholders to wrongly conclude that Sumo's performance and future prospects had continued to dramatically worsen during the first quarter reported following the announcement of the sale." SAC ¶ 106.

In considering whether the SAC adequately pled that the alleged omissions are materially misleading, the Court has considered the authorities relied on by the parties in their papers. In *Sanchez*, plaintiff alleged that defendant IXYS Corporation violated Section 14(a) of the Exchange

18

Act by issuing a proxy that omitted analyst projections of Littelfuse, Inc. prior to the merger of the two companies. *See Sanchez*, 2018 WL 4787070, at *1, 3. The Court found that the analyst projections were publicly available on Bloomberg and "were already included in the total mix of information considered by shareholders." *Id.* at *3. Accordingly, the Court held that the omitted analyst projections were not material. *Sanchez*, 2018 WL 4787070 at *3-4.

In *Textainer*, plaintiffs brought a Section 14(a) claim on the basis that the proxy statements omitted materially misleading information that the "price of shipping containers had increased by approximately 18-20%" between the date of defendants' agreement for an asset sale and the date of the proxy statements. *Textainer*, 2005 WL 3801596, at *5. The Court found that plaintiffs failed to allege with particularity why the alleged omissions were materially misleading. *Id.* at 6-8. The Court found that plaintiffs failed to allege that the omitted information was "not readily publicly available" and that it "significantly altered the 'total' mix of information made available" to the limited partners. *Textainer*, 2005 WL 3801596, at *6 (citing *TSC Industries,* 426 U.S. at 449). The Court reasoned that "the securities laws do not require disclosure of" publicly available information. *Textainer*, 2005 WL 3801596, at *6 (citing *In re Adams Golf, Inc. Securities Litigation,* 381 F.3d 267, 279 (3d Cir.2004) and *Whirlpool Financial Corp. v. GN Holdings, Inc.,* 67 F.3d 605, 609 (7th Cir.1995)). The Court explained that "investors in a limited partnership whose sole assets were shipping containers would be aware of" the market conditions for those shipping containers. *Textainer*, 2005 WL 3801596, at *6.

In *Miller*, the Ninth Circuit held that the defendant violated Section 12(a) of the Securities Act of 1933 because it materially misrepresented to investors in its Final Prospectus to the SEC that "it would list its shares on the NASDAQ National Market System." *Miller*, 519 F.3d at 881-82, 886. The Ninth Circuit rejected the premise that the Initial Prospectus, which was publicly filed with the SEC, made the listing on the NASDAQ market a condition to defendant's merger, and that "the condition was dropped" when the Final Prospectus was accepted by the SEC and distributed to the shareholders. *Miller*, 519 F.3d at 887. The Ninth Circuit explained that investors were not required to "independently seek out prior versions of SEC filings or otherwise familiarize themselves with the 'drafting history' of a prospectus." *Miller*, 519 F.3d at 887. The Ninth Circuit found that contents

1    of the Initial Prospectus could not be imputed to shareholders who relied on the Final Prospectus.

2    *See id.*

3        Plaintiffs have identified a recent Ninth Circuit decision addressing the issue of omission of

4    information from a Proxy that was otherwise publicly available. *See* ECF 64 (citing *Sohovich v.*

5    *Avalara, Inc.*, No. 24-1646, 2025 WL 957895, at *2-3 (9th Cir. Mar. 31, 2025)). There, the Ninth

6    Circuit reversed the District Court's order dismissing the claim.

7        In *Sohovich*, the plaintiff alleged that defendant Avalara's proxy statement misled

8    shareholders to believe that the Institutional Shareholder Services ("ISS") supported the merger

9    when, in fact, ISS actually qualified its support as "cautionary" and criticized other aspects of the

10    deal. *Sohovich v. Avalara, Inc.*, No. C22-1580 MJP, 2024 WL 895377, at *10 (W.D. Wash. Mar. 1,

11    2024), *aff'd in part, vacated in part, rev'd in part sub nom. Sohovich v. Avalara, Inc.*, No. 24-1646,

12    2025 WL 957895 (9th Cir. Mar. 31, 2025).

13        The district court dismissed this claim, finding that the omitted portions of the ISS report

14    were publicly filed along with a major investor's objections to the deal and thus available in the total

15    mix of relevant information. *Id.* In reversing this portion of the district court's order, the Ninth

16    Circuit found that plaintiff had adequately alleged that Avalara's statements about ISS's view of the

17    sale were objectively false and "create[d] an impression of a state of affairs that differs in a material

18    way from the one that actually exists." *Sohovich*, 2025 WL 957895, at *2. Relying on *Miller v.*

19    *Thane Int'l, Inc.*, 519 F.3d 879, 881 (9th Cir. 2008), the Ninth Circuit concluded that the fact that

20    "some of [ISS] report's unfavorable excerpts were filed by a third party, in a separate SEC filing,

21    does not render Avalara's statements about the report not false or misleading." *Id.* at 3.

22        In this Court's view, there are several distinguishing facts that make *Sohovich* not applicable

23    here. First, it is an unpublished decision. Second, Sohovich's claim was that the omission made the

24    proxy statement objectively false. And, third, the ISS report at issue was appended to another

25    investor's objections to the merger that were publicly filed.

26        In our case, Plaintiffs do not allege objective falsity, rather claiming a "misleading

27    impression." SAC ¶¶ 8, 33, 101. But, in truth, there is no doubt that Sumo's internal guidance, based

28    on ARR, showed a slowing of revenue growth. Further, Sumo's Q3 and Q4 financial results were

United States District Court
Northern District of California

publicly available in Sumo's regularly filed 8-K reports—which are regularly relied upon and reviewed by reasonable investors. SAC ¶¶ 45, 86. In *Sohovich*, the ISS report was only available as an attachment to another investor's objections. Thus, it is easy to see why the *Sohovich* claim survived under *Miller* where the degree of sleuthing necessary to locate the report would be beyond the ordinary experience of investors. This case is more like *Sanchez* and *Textainer* because 8-Ks and regular investor calls and press releases disclosing whether Sumo Logic beat public guidance are regularly and commonly followed by reasonable investors.

Having considered the parties' recited authorities and the facts alleged in the SAC, the Court finds that Plaintiffs have failed to adequately plead that the alleged omissions are materially misleading. The Court finds that Plaintiffs have failed to adequately allege facts showing a "substantial likelihood" that the alleged omissions would have "significantly altered the 'total mix of information made available" to a reasonable shareholder. *TSC Indus.*, 426 U.S. at 449. Here, Sumo Logic publicly disclosed that it beat guidance on the three key metrics in Q3 and Q4 2023 and that publicly available information was in "the 'total mix' of information made available" to shareholders. *TSC Indus.*, 426 U.S. at 449; *see* SAC ¶¶ 45-48, 86-87. While the Proxy instructed the shareholders to "rely only on the information contained or incorporated by reference" in the Proxy, SAC ¶ 89, Plaintiffs have not adequately alleged that a reasonable shareholder would not have been aware of the guidance beat when voting their shares. *See Sanchez*, 2018 WL 4787070, at *3 (finding omitted analyst projections immaterial because they were publicly available on Bloomberg and were "already included in the total mix of information considered by shareholders"); *Textainer*, 2005 WL 3801596, at *6 (dismissing Section 14(a) claim because the omitted market prices were "readily available in the public domain"); *see also In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) ("If the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's price and the market will not be misled.") (internal quotation omitted). Plaintiffs' reliance on *Miller* is not persuasive. *See* Opp. at 17 (citing *Miller*, 519 F.3d at 887); *see also* PSupp. at 1 (same). In *Miller*, the Court found that omitting "previous drafts" of the Proxy would have required investors to "independently seek out prior versions of SEC filings or otherwise familiarize themselves with the 'drafting history'

of a prospectus." *Miller*, 519 F.3d at 887. Unlike *Miller*, here, the alleged omissions were disclosed in free and easily accessible Form 8-Ks and in Sumo Logic's earning calls, and thus, they were in the "total mix" of information available to the shareholders. *See TSC Indus.*, 426 U.S. at 449; SAC ¶¶ 45-48, 86-87.

Plaintiffs have also failed to allege how the alleged omissions materially misled the stockholders in light of Sumo Logic's deteriorating prospects in Q3 and Q4 2023. It is well understood that public guidance is a less rigorous milestone than internal forecast. In the SAC, Plaintiffs allege in conclusive terms that, had the guidance beat in Q3 and Q4 2023 been disclosed in the Proxy, "Sumo shareholders would have had a very different impression of Sumo's financial performance and future prospects." SAC ¶ 8; *see* SAC ¶ 101 (the Q3 2023 omission "would have led Sumo shareholders to wrongly conclude that Sumo's performance and future prospects had deteriorated" in that quarter), SAC ¶ 106 ("[T]he Q4 2023 Omission created the false impression that Sumo's performance had further *deteriorated* in Q4 2023, and was *exclusively* negative in Q4 2023, which would have led Sumo shareholders to wrongly conclude that Sumo's performance and future prospects had continued to dramatically worsen during the first quarter reported following the announcement of the sale."). But other than the three cherry-picked key metrics, Plaintiffs make no allegations that Sumo Logic's future prospects were not deteriorating in Q3 and Q4 2023. *See* SAC ¶ 8. In light of the Proxy's instruction to the shareholders that "Sumo's results in Q4 2023 were purportedly 'below the company's internal forecast,'" SAC ¶ 104, and that Sumo Logic's year-over-year ARR growth and revenue growth had slowed in Q3 and Q4 2023, Plaintiffs have failed to allege how the alleged omissions created a materially misleading impression to a reasonable shareholder that was different from the reality. *See Varjabedian v. Emulex Corp.*, No. SACV1500554CJCJCGX, 2020 WL 1847708, at *7 (C.D. Cal. Feb. 25, 2020), *aff'd sub nom. Mutza v. Emulex Corp.*, 843 F. App'x 951 (9th Cir. 2021) ("To be misleading, an omission 'must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.'") (quoting *Brody*, 280 F.3d at 1006); Mot. Ex. 7 (Q2 2023 Earnings Release) at 1 (ARR grew 25% year-over-year and revenue grew 26% year-over-year in Q2 2023); Mot. Ex. 11 (Q3 2023 Earnings Release) at 1 (ARR grew 22% year-over-year and revenue grew 27% year-

1    over-year in Q3 2023); Mot. Ex. 10 (Q4 2023 Earnings Release) at 1 (ARR grew 17% year-over-

2    year and revenue grew 19% year-over-year in Q4 2023); Mot. at 15.

3        Lastly, the Court disagrees with Plaintiff's contention that the materiality issue should not

4    be resolved in Defendants' favor because "the fact that Sumo beat guidance on the Three Key

5    Metrics in Q3 and Q4 2023 was not so obviously unimportant to reasonable Sumo stockholders."

6    Opp. at 20 (citing *Hemmer Grp. v. Sw. Water Co.*, 527 F.App'x 623, 626 (9th Cir. 2013) and *Fecht*

7    *v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995)). Here, it is at least as plausible that had the Proxy

8    disclosed the guidance beat and the ARR decline, a reasonable shareholder would have received a

9    materially misleading impression of future performance as unrealistically rosy.

10       Accordingly, the Court GRANTS Defendants' motion to dismiss on the basis that the alleged

11   omissions were not materially misleading WITH LEAVE TO AMEND.

12                   **c.    The omissions are not subject to the PSLRA's safe harbor.**

13       Defendants argue that Plaintiffs' alleged omissions are "forward-looking" statements that

14   concerned Sumo Logic's "projections," and that Plaintiffs have failed to plead that those statements

15   "fall outside the scope of the PSLRA's safe harbor. Mot. at 21. Defendants argue that the Court has

16   previously found "[t]hese allegedly misleading statements about Sumo Logic's future outlook were

17   also accompanied by meaningful cautionary statements." *Id.* (citing Order at 22). In response,

18   Plaintiffs argue that the alleged omissions in the SAC concerned Sumo Logic's "past performance"

19   as opposed to "future prospects." Opp. at 14. Plaintiffs argue that the alleged omissions are not

20   protected by PSLRA's safe harbor because they are "non-forward-looking." *Id.* at 15.

21       The PSLRA safe harbor applies if a statement is "identified as a forward-looking statement,

22   and is accompanied by meaningful cautionary statements identifying important factors that could

23   cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. §

24   78u–5(c)(1)(A). A forward-looking statement is defined as "any statement regarding (1) financial

25   projections, (2) plans and objectives of management for future operations, (3) future economic

26   performance, or (4) the assumptions 'underlying or related to' any of these issues." *No. 84*

27   *Employer–Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936

28   (9th Cir. 2003) (citing 15 U.S.C. § 78u5 (i)). When a statement includes both forward-looking and

non-forward-looking statements, the challenged statements still fall within the safe harbor as forward-looking if, when "examined as a whole, the challenged statements relate[] to future expectations and performance." *Intuitive Surgical*, 759 F.3d at 1059 (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)). "[I]n order to establish that a challenged statement contains non-forward-looking features . . . a plaintiff must plead sufficient facts to show that the statement goes *beyond* the articulation of 'plans,' 'objectives,' and 'assumptions' and instead contains an express or implied 'concrete' assertion concerning a specific 'current or past fact[].'" *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1191 (9th Cir. 2021) (quoting *Quality Sys.*, 865 F.3d at 1142, 1144) (emphasis in original).

Here, the two statements concerning Sumo Logic's Q3 and Q4 2023 earnings are not forward-looking because they concern omitted facts about "concrete circumstances that have already occurred." *Wochos*, 985 F.3d at 1192. Specifically, the two statements concern Sumo Logic's past performance in Q3 and Q4 2023 and omit that Sumo Logic beat guidance on the three key metrics in those two quarters. SAC ¶¶ 99, 105. Thus, the two statements are not forward-looking and are not subject to the PSLRA safe harbor. *See Wochos*, 985 F.3d at 1192; *see also Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 774 (9th Cir. 2023) (holding statements concerning a company's past financial performance are not forward-looking).

Accordingly, the Court DENIES Defendants' motion to dismiss on the basis that Plaintiffs have failed to allege the omissions were exempt from the PSLRA safe harbor.

### 3. Loss Causation

Defendants argue that Plaintiffs have failed to allege that the "omissions were a proximate cause of Plaintiffs' alleged economic loss." Mot. at 22. Plaintiffs respond that the Court in its previous Order "explicitly held that 'Plaintiffs have plausibly alleged economic loss as required for loss causation . . . [and] plausibly alleged a proximate or caus[al] connection between Statements 4 and 5 and the economic loss.'" Opp. at 21 (citing Order at 36).

The Court agrees with Plaintiffs that it already addressed this issue in its previous order, where it found that Plaintiffs plausibly alleged loss causation with respect to the two alleged omissions. *See* Order at 35-36.

### C.  Count II, Violation of Section 20(a) of the Exchange Act

Plaintiffs allege a Section 20(a) claim against individual defendant Sayar. SAC ¶¶ 147–53. Section 20(a) requires underlying primary violations of the securities laws. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012); *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1052 (N.D. Cal. 2019), *aff'd*, 994 F.3d 1102 (9th Cir. 2021), and *aff'd*, 847 F. App'x 368 (9th Cir. 2021). Because Plaintiffs have failed to adequately plead their Section 14 (a) claim, it follows that Plaintiffs have also failed to adequately plead violations of Section 20(a). Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiffs' Section 20(a) claim WITH LEAVE TO AMEND.

## V.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.  Defendants' request for judicial notice is GRANTED.

2.  Defendants' motion to dismiss Plaintiffs' Count I for Violations of Section 14(a) for failure to plead negligence is GRANTED WITH LEAVE TO AMEND.

3.  Defendants' motion to dismiss Plaintiffs' Count I for Violations of Section 14(a) for failure to plead materially misleading omissions is GRANTED WITH LEAVE TO AMEND.

4.  Defendants' motion to dismiss Plaintiffs' Count I for Violations of Section 14(a) for failure to plead loss causation is DENIED.

5.  Defendants' motion to dismiss Plaintiffs' Count II for Violations of Section 20(a) of the Exchange Act is GRANTED WITH LEAVE TO AMEND.

//
//
//
//
//
//
//
//

Any amended complaint shall be filed within 60 days of the entry of this order. The amended complaint shall include a chart listing numerically each alleged false or misleading statement, the speaker, date, and reason for claim of falsity. The chart shall also cite the paragraphs in the amended complaint where the allegations are made. Plaintiffs shall also provide the Court a redlined version of the amended complaint.

Dated:  April 8, 2025

_____
BETH LABSON FREEMAN
United States District Judge